Jones, J.
We now hold that CPL 450.20 (subd 2) providing that the People may appeal a trial order of dismissal entered pursuant to CPL 290.10 is unconstitutional as violative of the right not to be placed twice in jeopardy for the same offense (NY Const, art I, § 6; US Const, 5th Arndt) if "further proceedings of some sort, devoted to the resolution of factual issues going to the elements of the offense charged, would have been *383 required upon reversal and remand”. (United States v Jenkins, 420 US 358, 370.)
We recently rejected a similar constitutional challenge to the People’s statutory right to appeal such an order (People v Fellman, 35 NY2d 158, mot to amd remittitur granted 35 NY2d 853). Subsequent to our decision in Fellman, however, the United States Supreme Court decided three cases which cast grave doubt as to the continuing viability of the Fellman decision (United States v Wilson, 420 US 332; United States v Jenkins, 420 US 358, supra, decided Feb. 25, 1975; Serfass v United States, 420 US 377, decided less than a week later on March 3, 1975).[1] We reach our decision today under constraint of these decisions, and accordingly overrule our holding to the contrary in People v Fellman (35 NY2d 158, supra).
In this case defendant was charged in a one-count indictment with having committed the crime of bribery as defined in section 200.00 of the Penal Law which at the time of indictment provided: "A. person is guilty of bribery when he confers, or offers or agrees to confer, any benefit upon a public servant upon an agreement or understanding that such public servant’s * * * judgment, action, decision or exercise of discretion as a public servant will thereby be influenced.” At defendant’s trial the People presented proof that, following the arrest of one Angel Rodriquez, defendant appeared at the local precinct station house and offered Rodriquez’ arresting officer money in return for the release of Rodriquez. Following dilatory tactics, the arresting officer succeeded in having defendant repeat the bribe offer in the presence of another officer while a tape recorder recorded the incriminating conversation.
At the conclusion of the People’s case-in-chief, defendant moved pursuant to CPL 290.10[2] for a trial order of dismissal *384 on the ground that a prima facie case of his guilt of bribery had not been made out. Defendant argued that the statute under which he had been indicted included as an element of the crime an "agreement or understanding” shared by the public servant sought to be influenced as well as by the bribe offeror and that the People had failed to establish a prima facie case because of insufficiency of proof as to this element. The prosecutor agreed that no evidence had been introduced to show that the police officer had entered into a corrupt agreement or understanding but argued that the statute did not require such a showing. Under the prosecutor’s analysis, the statutory term "agreement or understanding” referred only to the defendant’s state of mind and not to the state of mind of both the defendant and the public servant.
There was thus presented to the trial court a pure question of law, namely, what constitutes the crime of bribery? The court concluded that the "phrase [agreement or understanding] embraces an exchange of promises by both persons or a mutual understanding that in return for the benefit or money offered to the public servant—the offeree—that person will take or will not take certain action or would make or not make a certain decision”. Since the People had offered no proof of such an agreement or mutual understanding, the court granted defendant’s motion and entered a trial order of dismissal.
Pursuant to CPL 450.20 (subd 2)* *[3] the People took an appeal to the Appellate Division. Less than 10 days before argument of that appeal, the United States Supreme Court handed down its decisions in United States v Wilson (420 US 332, supra) and in United States v Jenkins (420 US 358, supra) establishing the principles by which it is to be determined in what circumstances the Government may appeal from an adverse ruling in a criminal trial without violating a defendant’s right not to be placed twice in jeopardy for the same offense. Relying on those decisions, the Appellate Division unanimously dismissed the appeal by the People on its analysis *385 that, if the People were to prevail on appeal, a new trial would be required and that a second trial would violate defendant’s rights under the Federal double jeopardy clause.[4] The court stated its reasons as follows: "We read [Jenkins and Wilson] as holding that only where there has been a jury verdict of guilty or findings by the court in a nonjury trial to support a verdict of guilty, but the trial court in either case then finds in the defendant’s favor on a question of law, will appeal be permitted. In such case the Double Jeopardy Clause does not bar an appeal because errors of law may be corrected and the guilty verdict reinstated without another trial.” (48 AD2d, at p 98.)
On the present appeal, the People argue that the Appellate Division incorrectly distilled from the Jenkins and Wilson decisions that the only relevant consideration in determining whether the Government may appeal from an unfavorable criminal trial ruling is whether, if such appeal should prove successful, the defendant would be required to stand retrial. The People urge that whether a new trial will be required should be viewed as only one of two factors to be considered; of equal importance, it is urged, is whether the trial court’s order was an "acquittal” or otherwise based on factual findings "favorable” to the defendant. While there is much in logic to support such an analysis (cf. People v Sabella, 35 NY2d 158, supra; Government Appeals of "Dismissals” in Criminal Cases, 87 Harv L Rev 1822, 1837-1841; Twice in Jeopardy, 75 Yale LJ 262), we conclude that the Supreme Court by its recent trilogy of double jeopardy cases has expressly rejected any such analysis and has interpreted the Federal double jeopardy clause exactly as did the court below. As that clause, found in the Federal Constitution, is binding on the States (Benton v Maryland, 395 US 784), we accordingly are constrained to conclude that the order at the Appel *386 late Division dismissing the appeal to that court must now be affirmed.
Analysis of the limits imposed by the double jeopardy clause on the availability to the prosecution of appeals from trial orders of dismissal necessarily turns on ascertaining the purpose which that clause may be said to effectuate. "Since the prohibition in the Constitution against double jeopardy is derived from history, its significance and scope must be determined, 'not simply by taking the words and a dictionary, but by considering [its] * * * origin and the line of [its] * * * growth’.” (Green v United States, 355 US 184, 199 [Frankfurter, J., dissenting].) It thus serves to recognize that the prohibition against being placed twice in jeopardy actually encompasses three prohibitions: "It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense.” (North Carolina v Pearce, 395 US 711, 717 [ns omitted].) Each "protection” serves different purposes and is surrounded by its own exceptions thereby complicating exposition of which rule attaches in different procedural situations. (For a critical analysis that "the judiciary is content to apply the double jeopardy prohibition with only a reverent nod to its policies” and without scrutiny of these policies, see Twice in Jeopardy, 75 Yale LJ 262.)
In the present case we are concerned with that function of double jeopardy which protects against retrial for the same offense following a previous acquittal thereon. In United States v Green (355 US 184, 187, supra), the Supreme Court analyzed the purposes and policies underlying this aspect of double jeopardy: "The underlying idea, one that is deeply ingrained in at least the Anglo-American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.” (See, also, United States v Jorn, 400 US 470, 479.) Thus the Supreme Court has identified two policies which underlie the prohibition against retrial following acquittal—prevention of harassment of criminal defendants and prevention of unjust convictions by subjection of defendants to *387 repeated criminal trials until a fact finder may be found who will agree to convict. While both policies are equally expressive of the maxim at common law, nemo debet bis vexari pro una et eadem causa (no one should be twice vexed for one and the same cause), it readily appears that, depending on which policy is considered paramount, the question as to whether the double jeopardy clause permits to the Government an appeal from a trial order of dismissal will result in different and even opposite answers. Thus if the policy underlying that clause is to prevent a defendant from suffering the "embarrassment, expense and ordeal” of a retrial should the Government prevail on its appeal from a trial order of dismissal, then the answer can only be that such appeal is barred by the double jeopardy clause. If on the other hand the predominant purpose is to prevent unjust convictions secured after repetitive trials before successive triers of facts, then an appeal by the Government from a trial order dismissing an indictment on a pure question of law (as in the present case) should not be barred by the double jeopardy clause. In the latter case, the question of a defendant’s guilt would have been withdrawn from the trier of fact on the basis of a determination of law by the trial court and should such legal ruling be reversed on appeal and defendant required to stand retrial, there would be no enhanced probability of an unjust conviction secured through repeated prosecutions there having been no prior determination of factual innocence.
In the present case, the People argue that we should find as the controlling policy here to be applied the second policy or the prevention of unjust convictions. Such a contention is not without logic as support. The Supreme Court has recognized in the context of premature termination of trials by declaration of mistrial that "the defendant’s interest in proceeding to verdict [and thereby precluding a second trial] is outweighed by the competing and equally legitimate demand for public justice”. (Illinois v Somerville, 410 US 458, 471.) The "embarrassment, expense and ordeal” to a defendant whose first trial ended in a hung jury and who is forced to undergo retrial may be said to be equally as substantial as the harassment suffered by a defendant who, as in the present case, has yet to present any proof of his innocence. It is also argued that adoption of a rule permitting prosecution appeals only where no possibility could result therefrom that defendant would be required to undergo the ordeal of retrial appears to run counter to the *388 Supreme Court’s admonition that "we have disparaged 'rigid, mechanical’ rules in the interpretation of the Double Jeopardy Clause. Illinois v. Somerville, 410 U. S. 458, 467.” (Serfass v Wilson, 420 US 377, 390, supra; see, also, United States v Jorn, 400 US 470, 480, supra [a "mechanical rule prohibiting retrial whenever circumstances compel the discharge of a jury without the defendant’s consent would be too high a price to pay for the added assurance of personal security and freedom from governmental harassment which such a mechanical rule would provide”].) Thus, while we recognize that permitting the People to appeal trial orders dismissing an indictment on a pure question of law could be determined not to be in contravention of the policy protecting against the securing of unjust convictions and that the corollary policy of protecting against harassment of defendants could be found to be "outweighed by the competing and equally legitimate demand for public justice” (such analysis was fundamental to our holding in People v Fellman, 35 NY2d 158, supra), we conclude that the recent Supreme Court trilogy of double jeopardy cases mandates a contrary holding. We turn then to an analysis of these cases.
In United States v Wilson (420 US 332, supra) the defendant was tried for converting union funds to his own use, the jury entered a verdict of guilty, but on a postverdict motion the trial court dismissed the indictment on the ground that defendant had been prejudiced by delay between offense and indictment. The Government took an appeal to the Court of Appeals pursuant to section 3731 of title 18 of the United States Code,[5] but that court held that the double jeopardy clause barred review of the trial court’s ruling. In so holding, the Court of Appeals "reasoned that since the District Court had relied on facts brought out at trial in finding prejudice from the preindictment delay, its ruling was in effect an acquittal.” (420 US, at p 335.) On appeal to the Supreme Court the Government argued that (p 335) "the constitutional restriction on governmental appeals is intended solely to protect against exposing the defendant to multiple trials, not to shield every determination favorable to the defendant from appellate review. Since a new trial would not be necessary *389 where the trier of fact has returned a verdict of guilty, the Government [argued] that it should be permitted to appeal from any adverse post-verdict ruling.” (Emphasis supplied.) In reversing the order of dismissal at the Court of Appeals, the Supreme Court adopted the Government’s arguments and held "that the constitutional protection against Government appeals attaches only where there is a danger of subjecting the defendant to a second trial for the same offense”. (420 US, at p 336.) The court’s holding was supported entirely by its analysis of the policies underlying the double jeopardy clause (420 US, at pp 339-342; for further analysis of such policies see Twice in Jeopardy, 75 Yale LJ 262). On the basis of such analysis, the court focused "on the prohibition against multiple trials as the controlling constitutional principle” (420 US, at p 346; emphasis supplied). Thus the court concluded that "where there is no threat of either multiple punishment or successive prosecutions, the Double Jeopardy Clause is not offended” and that, in the case before it "[s]ince reversal on appeal would merely reinstate the jury’s verdict, review of such an order does not offend the policy against multiple prosecution.” (420 US, at pp 344-345.)
While Wilson involved the constitutionality of prosecution appeals from trial court orders dismissing indictments following a verdict of guilty (and thus is instructive to the present case only in the analysis there engaged in by the court), in United States v Jenkins (420 US 358, supra.) the court was confronted with a Government appeal from a trial order which dismissed the indictment following a bench trial but prior to the trial court’s finding of facts on all elements of the crime charged. Thus the procedural posture of the appeal scrutinized in Jenkins may be said to be comparable to that here under review. In Jenkins the prosecution argued that, while appellate reversal of the trial court’s order dismissing the indictment would require defendant to stand retrial, such retrial would not be in violation of double jeopardy principles since the trial order of dismissal was not grounded in factual determinations favorable to the defendant. The court rejected that argument and held that the appeal was barred by the double jeopardy clause: "Here there was a judgment discharging the defendant, although we cannot say with assurance whether it was, or was not, a resolution of the factual issues against the Government. But it is enough for purposes of the Double Jeopardy Clause, and therefore for the determination *390 of appealability under 18 U. S. C. § 3731, that further proceedings of some sort, devoted to the resolution of factual issues going to the elements of the offense charged, would have been required upon reversal and remand. Even if the District Court were to receive no additional evidence, it would still be necessary for it to make supplemental findings. The trial, which could have resulted in a judgment of conviction, has long since terminated in respondent’s favor. To subject him to any further such proceedings at this stage would violate the Double Jeopardy Clause: 'The underlying idea, one that is deeply ingrained in at least the Anglo-American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity’ * * * Green v. United States, supra, at 187.” (420 US, at pp 369-370; emphasis supplied.)[6] It may be asserted, and accurately, that in Jenkins the Supreme Court was confronted with a judgment discharging the defendant as to which it could not be said "with assurance whether it v/as, or was not, a resolution of the factual issues against the Government”. (420 US, at pp 369-370.) It was open to the court in such circumstance to fashion a different rationale for the decision it made. The court could easily have held that where the dismissal was not on the law, i.e., where it was clearly on the facts or where it could not accurately be determined whether it was on the facts or the law, double jeopardy would preclude appeal. Consistently the court could then have held that when the dismissal was clearly on the law alone there would be no double jeopardy bar. (Cf. People v Sabella, 35 NY2d 158, supra.) But most significantly this rationale was not chosen as the basis of the court’s decision; on the contrary the touchstone was explicitly described as whether "further proceedings of some sort, devoted to the resolution of factual issues going to the elements of the offense charged, would have been required upon reversal and remand” (420 US, at p 370).
In the third of the trilogy of cases, Serfass v United States *391 (420 US 377, supra), the court was confronted with an appeal from a pretrial order dismissing an indictment based on a legal ruling made by the trial court after its examination of records and an affidavit setting forth evidence to be adduced at trial. Conceding that "formal or technical jeopardy had not attached” at the time when the order dismissing the indictment had been entered, the defendant nevertheless argued in the Supreme Court that, because the pretrial ruling was based on evidentiary facts outside of the indictment, which facts would constitute a defense on the merits at trial, the ruling was the functional equivalent of an acquittal on the merits and accordingly that the policies of the double jeopardy clause would in fact be frustrated by further prosecution (420 US, at pp 389-390). The Supreme Court rejected that argument and in so doing stressed the importance of "the procedural context” in which the order dismissing the indictment was entered (420 US, at p 392). Thus the court concluded that even if the order of dismissal might be characterized as an acquittal in a generic sense, such order (p 392) "has no significance in this context unless jeopardy has once attached”.
On the basis of these three cases we conclude that the Supreme Court has formulated a double jeopardy rule—albeit what may be characterized as a mechanical rule—which precludes the People from taking an appeal from an adverse trial ruling whenever such appeal if resolved favorably for the People might require the defendant to stand retrial—or even if it would then be necessary for the trial court "to make supplemental findings” (United States v Jenkins, 420 US 358, 370, supra). Double jeopardy principles will bar appeal unless there is available a determination of guilt which without more may be reinstated in the event of a reversal and remand. Application of such rule to the provisions of CPL 450.20 (subd 2) permitting the People to appeal from a trial order of dismissal renders that section unconstitutional except in the instance where disposition of the motion is reserved until after the jury verdict has been returned.
The People argue that the purpose of the double jeopardy clause is to preserve for the defendant "acquittals” or "favorable” factual determinations but not to shield from appellate review erroneous legal conclusions not predicated on any factual determinations. Thus the People contend that double jeopardy plays no role in the present case where all factual conclusions were made favorably to the People and where *392 dismissal was predicated solely on an erroneous conclusion by the trial court as to an issue of law.
In the light of the Supreme Court trilogy of cases, the People’s argument must fail. At the outset the argument ignores what that court termed the "controlling constitutional principle” in the context of application of double jeopardy principles to appeals by the Government—"prohibition against multiple trials”. (Wilson, 420 US 333, 346, supra.) In Jenkins the court left no doubt that the touchstone in the resolution of whether such appeals may be permitted is whether retrial—or even supplemental fact findings—would be necessitated by a successful Government appeal. The People’s argument that whether retrial might follow a successful Government appeal should be viewed as only one of two equally important factors is identical to the argument propounded by the Government in Jenkins (see 420 US, at p 368) and was expressly rejected by that court (420 US, at p 369).
More significant, the Supreme Court has left no doubt that whether the trial court’s order of dismissal was or was not grounded in factual determinations is immaterial to whether such dismissal may be appealed by the Government. In Wilson the order sought to be appealed was predicated entirely on factual determinations which were adduced from evidence presented at trial. An appeal by the Government was nonetheless permitted. In Jenkins the court could not have been more explicit in making it clear that the legal-factual dichotomy plays no role and that the concern of the double jeopardy clause extends no further than to the question whether retrial might follow a successful prosecution appeal (420 US, at p 370). It is instructive to note that when Jenkins was decided in the Court of Appeals, Judge Lumbard wrote a dissenting opinion grounded very much in the legal-factual dichotomy propounded herein by the People (490 F2d 868, 880-885). In its opinion the Supreme Court expressly rejected the analysis proposed by Judge Lumbard (420 US, at p 365, n 7).[7]
The People further propose that the issue herein presented may be analogized to the issue presented by the case which, *393 on a jury’s inability to reach a verdict, terminates prematurely in a declaration of mistrial and as to which the double jeopardy clause poses no bar to retrial (United States v Perez, 9 Wheat [22 US] 579). (It was on the basis of exactly this analogy that the Appellate Division, Second Department, concluded in People v Brooks, 50 AD2d 319, supra, that the Wilson, Jenkins and Serfass decisions do not require departure from our holding in People v Sabella, 35 NY2d 158, supra.) In the Jenkins decision, however, the court expressly rejected this analysis, finding it "of critical importance” that in the hung jury line of cases the trial ended in a mistrial (not a determination "favorable” to any party) whereas in the present type of case trial terminates in an order dismissing the charges at issue (clearly a determination "favorable” to defendant). (420 US, at p 365, n 7.)
We note in passing that in the present case had there been no application for a trial order of dismissal or had the trial court chosen not to exercise his discretion in terminating the trial on the basis of his legal conclusion as to what elements constitute the crime of bribery, this case would undoubtedly have proceeded to the jury under a charge which would have included the trial court’s interpretation of the bribery statute. In that event, since the People concededly had offered no proof on what the trial court would then have charged was a third element of the crime of bribery, the jury almost to a certainty would have acquitted this defendant, and it cannot be doubted that no appeal by the People would have lain from such acquittal (Kepner v United States, 195 US 100, 130; United States v Ball, 163 US 662, 671).
In sum we conclude that the issue presented in this case is directly controlled by the analysis articulated by the Supreme Court in the Wilson, Jenkins and Serfass decisions and, in particular, by the ratio decidendi in Jenkins. The inescapable rule which the Supreme Court has fashioned in these cases is that the double jeopardy clause precludes the People from appealing a trial court’s order dismissing an indictment where retrial of the defendant, or indeed any supplemental fact finding, might result from appellate reversal of the order sought to be appealed. It necessarily follows that in such instances CPL 450.20 (subd 2) cannot stand since it permits exactly that appeal which the Supreme Court has declared the double jeopardy clause will not tolerate.
It is worth adding that to characterize a rule of law as *394 "mechanical” is not always to denigrate the rule. Any rule the application of which forecloses considerations of fairness and equity peculiar to the individual case must be regarded with particular attention and care. On the other hand there is great merit to a proper categorical rule which is easy of application and susceptible of reliable prediction. So it is with the double jeopardy rule formulated by the Supreme Court. Nor may this rule be expected to frustrate the "public’s interest in fair trials designed to end in just judgments”. (Wade v Hunter, 336 US 684, 689.) Whilé some difficulties may be encountered in cases now in the appellate process, the Appellate Divisions in two departments have previously adopted what we, too, conclude is the rule of the Supreme Court. As to cases in the future, no great problems should be anticipated. In exercising his responsible discretion in deciding whether to grant a motion for a trial order of dismissal, the Trial Judge must now be aware that the consequence of granting such a motion prior to the return of the jury verdict will be to foreclose appeal by the prosecution. This is not to say that the granting of such a motion prior to verdict may not be fully warranted; it is to say that our decision introduces another consideration to be weighed in the disposition of an application for a trial order of dismissal.
For the reasons stated, the order of the Appellate Division should be affirmed.

. Both the First Department in the present case (48 AD2d 95) and the Fourth Department in People v Gesegnet (47 AD2d 333) have concluded in the light of the recent Supreme Court trilogy, that Fellman is no longer controlling and that CPL 450.20 (subd 2) is unconstitutional. The Second Department has reached a contrary conclusion in People v Brooks (50 AD2d 319).

. CPL 290.10 provides in pertinent part:
"1. At the conclusion of the people’s case or at the conclusion of all the evidence, the court may, except as provided in subdivision two, upon motion of the defendant, issue a 'trial order of dismissal,’ dismissing any count of an indictment upon the ground that the trial evidence is not legally sufficient to establish the offense charged therein or any lesser included offense.
"2. Despite the lack of legally sufficient trial evidence in support of a count of an *384 indictment as described in subdivision one, issuance of a trial order of dismissal is not authorized and constitutes error when the trial evidence would have been legally sufficient had the court not erroneously excluded admissible evidence offered by the people.”

. CPL 450.20 (subd 2) provides that the People may take an appeal as of right to an intermediate appellate court from a trial order of dismissal entered pursuant to CPL 290.10. For the legislative history underlying this provision see People v Sabella (35 NY2d 158, 164-165).

. In dictum, four of the five Justices at the Appellate Division indicated that, had they reached the merits of the case before them, they would have concluded that the People had made out a prima facie case of bribery; under their interpretation of section 200.00 of the Penal Law there was no requirement that the People prove that the police officer to whom the bribe was offered agreed or understood that his decision or exercise of discretion would thereby be influenced.
Because our jurisdiction on this appeal extends only to the correctness of the dismissal of the appeal at the Appellate Division (CPL 470.60, subd 3) and because of our disposition of this appeal, we express no view as to the correctness of the trial court’s interpretation of section 200.00 of the Penal Law on which the trial order of dismissal was predicated.

. That section provides in relevant part: "In a criminal case an appeal by the United States shall lie to a court of appeals from a decision, judgment, or order of a district court dismissing an indictment or information as to any one or more counts, except that no appeal shall lie where the double jeopardy clause of the United States Constitution prohibits further prosecution.”

. We consider it to be at least of some significance that in its quotation from Green as to the policy underlying the double jeopardy clause, the court chose to include only the reference to preventing harassment of criminal defendants and excised the reference to prevention of unjust convictions (for full quotation of language in Green see p 386, supra).

. We cannot read Mr. Chief Justice Burger’s language in his opinion in Serfass which focused the court’s holding in that case on the critical circumstance that jeopardy had not there attached—“we of course express no opinion on the question whether a similar ruling by the District Court after jeopardy had attached would have been appealable” (420 US, at p 394)—as designed significantly to cut back, or to signal a cutback, in the decision in Jenkins, handed down but six days previously.