THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v MARIO RASERO, Respondent.

First Department, June 20, 1978

## APPEARANCES OF COUNSEL

*Alan D. Marrus* of counsel *(Thomas Geller* with him on the brief; *Mario Merola, District Attorney),* for appellant.

*Bernard Jay Coven, P. C.,* for respondent.

## OPINION OF THE COURT

FEIN, J.

The People appeal from an order rendered April 8, 1976, after a nonjury trial in Supreme Court, Bronx County, which granted defendant's motion to dismiss an indictment charging defendant police officer Mario Rasero (Rasero) with three counts of perjury in the first degree. Dismissal was predicated solely on the ground of collateral estoppel, after the trial court had found defendant guilty of all three counts of the indictment. The issues are (1) the propriety of the trial court's ruling that collateral estoppel required dismissal, and (2)

whether reversal and remand would place defendant in double jeopardy. This latter issue appears to be one of first impression in this State.

, Defendant and Police Officer Cerniglia (Cerniglia), both on patrol duty at the time of the material events, responded to a report of an automobile accident on the evening of May 28, 1972, on East 222nd Street near its intersection with Kingsland Avenue. The report in substance was that the operator of the vehicle, Anthony Scocozza (Scocozza), in an intoxicated condition, had driven his vehicle at a high rate of speed through a heavy police barricade, striking two parked cars and coming to a halt in a portion of the street under excavation. Rasero and Cerniglia arrived on the scene about 40 minutes after the accident. In an accident report signed by Rasero and filed subsequently, the officers ascribed the cause of the accident to a blowout in Scocozza's right front tire.

However, eyewitnesses at the scene attributed the accident to Scocozza's intoxicated condition and the high rate of speed at which his vehicle was traveling, which they estimated to be in excess of 60 miles per hour. According to witnesses, one of whom had written to the Police Department after the operator had resisted claims for property damage resulting from the accident, Scocozza seemed very relaxed, his face was flushed, his eyes were red and watery, and his breath smelled of alcohol. The witnesses concluded that Scocozza was heavily intoxicated at the time of the accident and later when the police arrived. It was claimed that the officers gave the impression that they knew Scocozza. The officers admittedly drove him home. Witnesses had also reported that as Scocozza was being escorted to the patrol car, he offered the officers a $50 bribe to take him to a subway or to a train station. Both officers denied any such bribe offer. About 15 minutes after the patrol car left with Scocozza, the owner of one of the damaged vehicles took photographs of Scocozza's car, which clearly showed that the tires were inflated. This was contrary to the officers' accident report subsequently filed which attributed the cause of the accident to be a blowout in the right front tire. About one hour after the occurrence, Scocozza returned to the scene by taxi and drove off in his vehicle. As he turned the corner, witnesses heard what sounded like a blowout.

A departmental investigation of the two officers was conducted following receipt by the Police Department of a letter

from one of the alleged eyewitnesses. When the preliminary investigation revealed discrepancies between the accident reports filed by the officers and the accounts of the incident as related by witnesses at the scene, the matter was referred to the District Attorney. Both Rasero and Cerniglia testified before the Grand Jury, in essence that: (1) the accident resulted from a blowout; (2) Scocozza appeared to be in a state of shock when the officers arrived on the scene, but was not drunk; and (3) Scocozza did not offer them a bribe.

Thereafter each officer, by separate indictment, was charged with three counts of perjury in the first degree. Cerniglia's case proceeded to a bench trial, resulting in an acquittal on all three counts. The court, in its written decision, found the evidence sufficient to create a reasonable doubt as to Cerniglia's guilt.

Rasero's case, now here, was subsequently tried, without a jury, by a different Judge, who rendered a written opinion. The court, upon review of all of the facts, found that Rasero had "deliberately lied to the grand jury" as to each count of the indictment, when "he denied (1) that Scocozza had offered him $50.00 to take him to 'the train station' and (2) that Scocozza never mentioned $50.00". The court further found that Rasero "deliberately deceived the grand jury when he told them that Scocozza was 'only in a mild state of shock' ", at the time the officers arrived at the scene. The court also found that Rasero had "deliberately lied to the grand jury when he ascribed the cause of the accident to a blowout on the right front tire." The court's written opinion rendered after trial specifically found: "The facts in the trial establish beyond cavil that Scocozza was thoroughly intoxicated when he drove full tilt through the barricade." The driver was found to have consumed two bottles of beer and eight shots of liquor immediately prior to the accident. Scocozza recalled asking the officers to take him home but did not remember offering them $50. The court further found that the photographs taken of the Scocozza vehicle and the testimony of witnesses to the occurrence established that the "blowout" story was false and had been "invented by the officers to cover their improper police action."

Thus the trial court made specific findings that Rasero had deliberately lied to the Grand Jury, confirming each perjury count contained in the indictment. Despite these findings "as a matter of fact, that the People have established the essential

allegations of this indictment", the Trial Justice stated he was "nevertheless constrained as a matter of law to dismiss the indictment." Dismissal was predicated solely upon application of the doctrine of collateral estoppel, based upon the earlier acquittal of defendant's partner, Cerniglia. The court reasoned that the underlying facts in both cases were the same and that the People had a full and fair opportunity to litigate the issues in the Cerniglia case.

■ The acquittal of Cerniglia, however, does not operate under established principles of *res judicata* or collateral estoppel so as to bar the subsequent prosecution of Rasero. In this respect, the trial court erred in applying the doctrine as it has developed in civil cases.

■ ■ Under current doctrine, in order to invoke collateral estoppel in civil cases it must be shown that (1) there is an identity of issue necessarily decided in the prior action and decisive of the present suit; and (2) there was a full and fair opportunity afforded to the party against whom the estoppel is sought to be invoked to contest the decision now said to be controlling *(Schwartz v Public Administrator of County of Bronx,* 24 NY2d 65). In short, in civil cases the litigant barred by collateral estoppel must have had an opportunity to contest the precise issue resolved in the prior action. However in criminal cases there must also be an identity of parties.

As stated in *Matter of McGrath v Gold* (36 NY2d 406, 411) relied on by the trial court:

"Although collateral estoppel, as an aspect of the broader doctrine of *res judicata,* was originally developed in connection with civil litigation * * * it is also applicable in criminal cases *(Yates v United States,* 354 US 298, 335-336; *People v Lo Cicero,* 14 NY2d 374; *People v Dreares,* 15 AD2d 204, 206, affd 11 NY2d 906), although not always in quite the same way as in civil cases *(People v Reisman,* 29 NY2d 278, 285, cert den 405 US 1041 * * *.

"Collateral estoppel means simply that, when the issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit *(Ashe v Swenson,* 397 US 436, 443, 445; see *People v Cunningham,* 62 Misc 2d 515, 519). This doctrine has acquired constitutional dimension since the Supreme Court in *Ashe* held that it is embodied in the guarantee of the Fifth Amendment of the United States Constitution against double jeopardy.

"As indicated in *Ashe,* an ultimate fact adjudged or determined in the previous litigation must be accepted by the same parties in subsequent litigation".

However, here there is neither identity of issue nor identity of parties. The subject of the prior prosecution was whether Cerniglia had perjured himself before the Grand Jury. Resolution of that issue has no legal bearing upon the independent issue of whether Rasero committed perjury before the same Grand Jury. That the underlying factual issues may be the same, in both criminal prosecutions, to wit (1) whether there was a bribe offer; (2) whether Scocozza was intoxicated; and (3) the accuracy of the police report that a blowout was the cause of the accident, is neither controlling nor dispositive. The issue is whether Rasero perjured himself in his testimony before the Grand Jury. That was plainly not at issue in the prior litigation concerning the independent perjury charge against Cerniglia. The fact that their testimony may have been strikingly similar as to the underlying facts is irrelevant. Moreover, even if similarity as to the underlying facts is to be considered, a determination as to whether Cerniglia was offered or took a bribe has no evidentiary bearing upon the independent issue as to whether Rasero was offered or received a bribe. With respect to the falsity of the accident report prepared after the accident, it is not without significance that the report was actually prepared by Rasero.

The Trial Justice erred in stating that the inquiry in both trials was not so much what the officers told the Grand Jury but rather what had occurred that night on East 222nd Street.

The precise issue in each of the criminal trials was what the individual defendants Cerniglia and Rasero testified to before the Grand Jury about the events of that night as compared with the events as they occurred. The issue here is whether Rasero perjured himself in his testimony before the Grand Jury. The issue in Cerniglia's case was whether Cerniglia perjured himself before the Grand Jury. The issue of Rasero's perjury was clearly not the subject of the prior litigation concerning the independent perjury charge against Cerniglia.

The cases relied upon by the Trial Justice are not to the contrary. In *Vavolizza v Krieger* (33 NY2d 351) plaintiff sued his attorney alleging that the attorney had improperly coerced him into pleading guilty in a prior Federal criminal action. Plaintiff was held barred by collateral estoppel because his own prior declarations before the Federal court at time of plea

and sentence as to his guilt negated any claim of coercion. Moreover, plaintiff's subsequent motion in the Federal court to set aside his conviction on the same ground had been denied. Plaintiff was barred both on the basis of his own admissions and the holding against him in a proceeding where he had a full opportunity to prove the assertion of coercion now sought to be litigated.

*Matter of Levy* (37 NY2d 279) a disciplinary proceeding, held only that in the disciplinary proceeding, the lawyer was barred from relitigating the issue of his guilt which he had a full opportunity to litigate in the criminal proceeding.

The ultimate issue of Rasero's perjury has not been previously litigated. Accordingly there is neither an identity of issue nor of parties. An acquittal of one defendant on a prior trial does not operate to preclude a subsequent trial or conviction of a second defendant, although both were indicted in connection with the same transaction, or even where the second was charged with aiding and abetting the first *(People ex rel. Guido v Calkins,* 9 NY2d 77; *People v O'Dell,* 34 AD2d 856; *People v Notrica,* 69 Misc 2d 591; *People v Legrand,* 88 Misc 2d 685; *United States v Musgrave,* 483 F2d 327, cert den 414 US 1023).

█ Having determined that the trial court erred in dismissing the indictment on the ground of collateral estoppel there remains for determination whether reversal and remand would constitute double jeopardy, violative of defendant's constitutional rights.

The Fifth Amendment double jeopardy prohibition, a fundamental constitutional principle, applicable to the States by virtue of the Fourteenth Amendment to the United States Constitution *(Benton v Maryland,* 395 US 784, 794), is also preserved by our State Constitution (NY Const, art I, § 6), providing that no person may be twice placed in jeopardy for the same offense.

In *People v Brown* (40 NY2d 381, 393), the Court of Appeals, in reliance upon *United States v Jenkins* (420 US 358), *United States v Wilson* (420 US 332) and *Serfass v United States* (420 US 377) held: "The inescapable rule which the Supreme Court has fashioned in these cases is that the double jeopardy clause precludes the People from appealing a trial court's order dismissing an indictment where retrial of the defendant, or indeed any supplemental fact finding, might result from appellate reversal of the order sought to be appealed." In *Brown,*

reversal and remand were precluded because the trial court had granted defendant's motion to dismiss at the end of the prosecution's case. The result in *Brown* was clearly dictated by *Jenkins, Wilson* and *Serfass (supra).*

In *United States v Jenkins (supra)* the Government appealed from the trial court's order which dismissed the indictment following a bench trial, but before the court had made findings of fact as to the elements of the crime charged. The United States Supreme Court held that reversal of the trial court's order dismissing the indictment would require retrial, or, at the least, supplemental factual finding and that either would violate the double jeopardy prohibition. In *United States v Wilson (supra)* dismissal of the indictment resulted from a postverdict motion after the jury had returned with a verdict of guilty, the Supreme Court holding that reversal on appeal would not be violative of the double jeopardy clause, since reversal would merely reinstate the verdict and would not subject defendant to a second trial on the same offense. In *Serfass v United States (supra)* the Supreme Court similarly found no double jeopardy prohibition against reversal of a pretrial order dismissing an indictment since jeopardy had not attached, albeit the dismissal was based upon an affidavit setting forth the evidence which would be adduced upon the trial.

The double jeopardy doctrine which has thus evolved clearly precludes the People from any appeal from an adverse trial ruling where favorable resolution of the appeal would require either that the defendant stand retrial, or that the trial court render supplemental findings *(People v Brown, supra,* p 391).

Reversal and remand here, however, would require neither retrial nor any supplemental findings. Accordingly, it is not offensive to double jeopardy principles. The decision of the court following trial carefully sets forth all of the court's findings of fact and conclusions of law. The trial court specifically found that Rasero had deliberately lied in testifying before the Grand Jury and had in fact perjured himself as charged in each count of the indictment. Moreover, the record is clear that the trial court *found the defendant guilty as charged,* but nonetheless, dismissed the indictment under an erroneous application of the doctrine of collateral estoppel. It appears from the record that on April 8, 1976, the same date as the written decision granting defendant's motion to dismiss, the court, in the presence of counsel, stated in open court, on

the record, "All right, gentlemen. I've endeavored *[sic]* an opinion at the conclusion of the case and here's copies for you, substance of which that the *defendant is guilty as held [sic]* but under the doctrines *[sic]* of collateral estoppel I must find him not guilty as a matter of law and that's my decision. The indictment is dismissed." (Emphasis added.) The court's written opinion confirms its finding that the People had established the essential allegations of the indictment.

The Court of Appeals expressly held in *Brown (supra,* p 391): "Double jeopardy principles will bar appeal unless there is available a determination of guilt which without more may be reinstated in the event of a reversal and remand." Here, from both the trial court's written opinion and from its verdict in open court, there was an explicit finding and determination as to defendant's guilt, in so many words. The additional finding dismissing the indictment was premised solely on the court's mistaken belief as to the applicability of the doctrine of collateral estoppel as a bar. In this respect, the trial court was clearly in error. Here, reversal and remand will require neither retrial nor any supplemental findings. Since the trier of the facts has found defendant guilty as charged, reversal, as in *United States v Wilson* (420 US 332, *supra)* will merely reinstate the factual finding as to defendant's guilt. All that remains is that the matter be remanded for appropriate sentencing. The determination which we here reach is neither violative of nor precluded by the policies underlying the prohibition against double jeopardy.

Accordingly, the order, Supreme Court, Bronx County (ZIMMERMAN, J.), rendered April 8, 1976, which dismissed the indictment should be reversed, on the law, the determination of defendant's guilt reinstated and the proceeding remanded for imposition of appropriate sentence.

BIRNS, J. (dissenting). If this appeal were permitted, I would agree with the majority that the trial court improperly applied the rule of collateral estoppel in dismissing the indictment against defendant. But the appeal is barred by the constitutional proscriptions against double jeopardy (US Const, 5th and 14th Amdts; NY Const, art I, § 6). Therefore, I dissent from the order of the court which would reverse the dismissal of the indictment, "reinstate" the nonexisting determination of defendant's guilt and remand the proceeding for the imposition of appropriate sentence. I would, instead, dis-

miss the appeal by the District Attorney from the judgment dismissing the indictment.

A determination of a defendant's guilt upon trial can only be rendered by a verdict, which is "the announcement by a jury in the case of a jury trial, or by the court in the case of a non-jury trial, of its decision upon the defendant's guilt or innocence of the charges submitted or considered by it." (CPL 1.20, subd 12.) It is a formal decision upon which a judgment to that effect may be entered (see *People v Paczovski,* 81 Misc 2d 381, 383) and is the only manner provided by statute for declaring such decision (CPL 320.20, subd 3, par [d]; CPL 350.10, subd 3, par [d]). In reversing the trial court's dismissal of the indictment and remanding the case for sentence, the majority has assumed that the trial court rendered a verdict of guilt and thereafter set the verdict aside as a matter of law and dismissed the indictment.

But this conclusion of the majority is not supported by the record. The record before us shows that after the People's case was completed, defendant moved to dismiss on the ground that the People failed to prove a prima facie case. Counsel for defendant asserted that the evidence was insufficient to warrant consideration of the case by the court and that acquittal of Police Officer Cerniglia in the companion case warranted the application of the rule of collateral estoppel so as to require dismissal of the indictment herein. The court reserved decision on defendant's motion. Following presentation of defendant's case both sides rested. Thereafter the prosecution and the defense presented their summations, the prosecution arguing, *inter alia,* that the rule of collateral estoppel was inapplicable to the case at bar. On April 8 the trial court without preliminaries made an oral statement as follows: "THE COURT: All right, gentlemen. I've endeavored an opinion at the conclusion of the case and here's copies for you, substance of which that the defendant is guilty as held *[sic]* [hell?] but under the doctrines of collateral estoppel *I must find him not guilty* as a matter of law and that's my decision. The indictment is dismissed." (Emphasis added.)

In the written opinion to counsel, the trial court, after summarizing the salient facts wrote: "Having found as a matter of fact that the People have established the essential allegations of this indictment, I am nevertheless constrained as a matter of law to dismiss the indictment."

In concluding that the trial court rendered a verdict of

guilt, the majority concentrates upon the oral statement adverted to, focusing on that phrase thereof in which the court stated, "substance of which that the defendant is guilty as held *[sic]* [hell?]".

We should, however, focus on that portion of the court's oral statement that it has *"endeavored a [written] opinion at the conclusion of the case"* (emphasis added).

The oral statement presaged the conclusion of the case. The written opinion concluded it.

It is obvious that the court in its oral statement did no more than opine that the facts apart from other considerations would warrant a finding of guilt, but the court in fact never rendered a *verdict* of guilt nor did it intend to. In support of this conclusion, the record bears no evidence that a verdict of guilt was entered.

If a conclusion that a verdict was rendered is at all warranted, such conclusion must be that defendant, whether rightly or wrongly, was found not guilty. ("I must find him not guilty as a matter of law and that is my decision.")

The procedure adopted by the trial court in the case before us is dissimilar from the procedure recently highlighted by the United States Supreme Court in *United States v Ceccolini* (435 US 268). There defendant was found guilty after a bench trial in a District Court, but immediately after the finding of guilt the District Court granted defendant's motion to "suppress" the testimony of a principal witness because it had been obtained in an unconstitutional manner. The District Court, assuming that defendant's motion for a directed verdict included a motion to set aside a verdict of guilt, granted the motion because it concluded that without the witness' testimony there was insufficient evidence of defendant's guilt. The Government appealed these rulings to the United States Court of Appeals, that court concluding that the Government was entitled to appeal both the order granting the motion to suppress and the order setting aside the verdict of guilt, since further proceedings if the Government were successful on the appeal would not be barred by the double jeopardy clause *(United States v Ceccolini,* 542 F2d 136, 139-140). The Government, however, was not successful on the merits of its appeal; the Court of Appeals by a divided vote affirmed the District Court's suppression ruling *(supra,* pp 140-142).

In the appeal by the Government which followed, the Su-

preme Court reversed the ruling of the Court of Appeals on the suppression motion and observed in words applicable here to the double jeopardy issue that (p 271) "[t]he District Court had sensibly first made its finding on the factual question of guilt or innocence, and then ruled on the motion to suppress; a reversal of these rulings would require no further proceedings in the District Court, but merely a reinstatement of the finding of guilt. *United States v Morrison,* 429 U. S. 1 (1976); *United States v Wilson,* 420 U. S. 332, 352-353 (1975)."

If there had been a verdict of guilt and the trial court had set it aside erroneously as a matter of law correction of the error at the appellate level would be warranted *(People v Brown,* 40 NY2d 381, dissenting opn of Chief Judge BREITEL at p 395). But a verdict of guilt does not appear in the record. The majority is attempting to find such a verdict in order to provide appellate review of an erroneous legal conclusion by the trial court.

In my view the opinion in the *Brown* case *(supra,* pp 391-392 [JONES, J.]), enunciated the guidelines to be followed by appellate courts: "[W]e conclude that the Supreme Court has formulated a double jeopardy rule—albeit what may be characterized as a mechanical rule—which precludes the People from taking an appeal from an adverse trial ruling whenever such appeal if resolved favorably for the People might require the defendant to stand retrial—or even if it would then be necessary for the trial court 'to make supplemental findings' *(United States v Jenkins,* 420 US 358, 370, *supra). Double jeopardy principles will bar appeal unless there is available a determination of guilt which without more may be reinstated in the event of a reversal and remand. Application of such rule to the provisions of CPL 450.20 (subd 2) permitting the People to appeal from a trial order of dismissal renders that section unconstitutional except in the instance where disposition of the motion is reserved until after the jury verdict has been returned.*

"The People argue that the purpose of the double jeopardy clause is to preserve for the defendant 'acquittals' or 'favorable' factual determinations but not to shield from appellate review erroneous legal conclusions not predicated on any factual determinations. Thus the People contend that double jeopardy plays no role in the present case where all factual conclusions were made favorably to the People and where

dismissal was predicated solely on an erroneous conclusion by the trial court as to an issue of law.

"In light of the Supreme Court trilogy of cases,* the People's argument must fail." (Emphasis added.)

In the case before us, as there was no verdict of guilt rendered, there exists no such verdict to be reinstated. Hence "double jeopardy" does play a role in this appeal. Accordingly, the appeal by the People from the judgment dismissing the indictment should be dismissed.

MARKEWICH and SULLIVAN, JJ., concur with FEIN, J.; BIRNS, J. P., dissents in an opinion.

Order, Supreme Court, Bronx County, entered on April 8, 1976, reversed, on the law, the determination of defendant's guilt reinstated and the proceeding remanded for imposition of appropriate sentence.

---

* These cases are: *United States v Jenkins* (420 US 358); *United States v Wilson* (420 US 332); *Serfass v United States* (420 US 377) and are considered in the majority opinion.