People v Dziamba (2025 NY Slip Op 51744(U))

[*1]

People v Dziamba

2025 NY Slip Op 51744(U)

Decided on November 3, 2025

County Court, Columbia County

Herman, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on November 3, 2025
County Court, Columbia County

The People of the State of New York,

against
Emily Dziamba, JESSIE PERELL and NATHAN SHOOK, Defendants.

Indictment No. 70016-25

Chris Liberati-Conant, Esq.
Columbia County District Attorney
325 Columbia Street, Suite 260
Hudson, New York 12534
By: Carlyanne Cicero, Esq., Assistant District Attorney 
Attorney for the People

William J. Galvin, Esq.
P.O. Box 320
Ghent, New York 12075
Attorney for the Defendant, Emily Dziamba
Dennis W. McEvoy, Esq.
One City Centre, Suite 304G
P.O. Box 1248
Hudson, New York 12534
Attorney for the Defendant, Jessie Perell 
Shane A. Zoni, Esq.
Columbia County Public Defender
610 State Street
Hudson, New York 12534
By: Shane A. Zoni, Esq., Public Defender
and Zachary P. Halperin, Esq., Assistant Public Defender
Attorneys for the Defendant, Nathan Shook 

Brian J. Herman, J.

By indictment No. 70016-25 the defendants, Emily Dziamba, Jessie Perell and Nathan Shook (collectively, the "defendants"), are charged with one count of Criminal Possession of a [*2]Controlled Substance in the Fourth Degree in violation of §220.09(1) of the Penal Law, a class C felony; one count of Criminal Possession of a Controlled Substance in the Fourth Degree in violation of §220.09(6), a class C felony; and one count of Criminal Possession of a Controlled Substance in the Seventh Degree in violation of §220.03 of the Penal Law, a class A misdemeanor. It is specifically alleged that on November 16, 2024 in the Town of Claverack, Columbia County, the defendants knowingly and unlawfully possessed amounts of cocaine and psylocibin. Additionally, defendant Perell is charged with Aggravated Unlicensed Operation of a Motor Vehicle in the Second Degree in violation of §511(2)(a)(iv) of the Vehicle and Traffic Law, an unclassified misdemeanor, based upon the allegation that he operated a motor vehicle on Old Lane in the Town of Claverack, Columbia County, while knowing or having reason to know that his license to operate a motor vehicle had been suspended.
The defendants each pled not guilty and moved for hearings pursuant to People v Huntley (15 NY2d 72 [1965])[FN1]
and Mapp v Ohio (367 US 643 [1961])[FN2]
. Hearings were granted and held before the court on October 9 and October 14, 2025. The People proffered the testimony of Troopers Garrett Pough, Glen Cook and Investigator Megin Miller of the New York State Police. The defendants called no witnesses. The People and the defendants submitted post-hearing memoranda for the court's consideration. Having heard and considered the testimony and evidence received and having reviewed the parties' submissions, with due deliberation having been had thereon, the court renders the following findings of fact and conclusions of law. FINDINGS OF FACT
On November 16, 2024 at approximately 3:00 p.m., Trooper Garrett Pough of the New York State Police initiated a traffic stop of a four-door pickup truck on Old Lane in the Town of Claverack, Columbia County. Prior to initiating the stop, Trooper Pough observed what he described as an "expired inspection certificate" on the windshield of the vehicle and identified its operator, defendant Perell, as someone he knew from an interaction approximately ten days prior to have a suspended driver's license. With respect to the vehicle's inspection sticker, Trooper Pough testified that the sticker affixed to the vehicle was "bright red" and stickers issued in calendar year 2024 were blue. 
Trooper Pough testified that upon approaching the vehicle he observed defendant Dziamba in the front passenger seat and defendant Shook behind her in the rear passenger seat. At the onset of the interaction, though admittedly unaware of the status of defendant Perell's driver's license at that time, Trooper Pough inquired of defendant Perell as to "why he was driving the vehicle, because I've known him to have a suspended license." Trooper Pough could not recall Mr. Perell's response. Thereupon, Trooper Pough directed defendant Perell to exit the vehicle to interview him. On inquiry as to why he directed defendant Perell to exit the vehicle, Trooper Pough denied that defendant Perell was reaching in his pockets, "shuffling around" or doing anything suggesting his intent to cause harm. Rather, he simply "wanted to interview him outside the vehicle." Defendant Perell complied and Trooper Pough escorted him to the rear of the vehicle. Trooper Pough did not testify to ascertaining the status of defendant Perell's driver's [*3]license before directing him to exit the vehicle. 
Trooper Pough then inquired as to the "contents of the vehicle, if there was anything in it that shouldn't be." On inquiry as to why he asked defendant Perell this question, Trooper Pough responded, "[j]ust a routine question. I asked based off of the previous encounter I also had with him." When asked what, specifically, about the encounter with defendant Perell ten days prior prompted him to inquire as to the contents of the vehicle, Trooper Pough responded, "[t]en days prior, [defendant] Perell's vehicle was towed as a result of him having no license and as the vehicle was inventoried ten days prior. So in this case, since I knew his vehicle was going to be towed, I wanted to know what weas in his vehicle so I could — for inventory purposes." Trooper Pough could not recall what was found in the vehicle at that time. 
Defendant Perell responded that there was an Adderall pill that belonged to a "buddy" in the center console, whereupon Trooper Pough directed defendants Dziamba and Shook to also step out of the vehicle and Trooper Pough called for support from another member of the State Police. Approximately five to ten minutes later, as Trooper Pough's interview of defendant Perell continued, Trooper Glen Cook arrived at the scene. A short time later, a third Trooper, Trooper Warisilla, arrived to assist. Trooper Pough advised Trooper Cook of defendant Perell's statements regarding the Adderall pill. The Troopers then conducted a search of the vehicle, proceeding without defendant Perell's consent, as Trooper Pough testified, "due to [defendant] Perell identifying that there was an Adderall pill that was not his in the vehicle." Trooper Pough testified that because defendant Perell indicated the pill was in the center console, they began the search there. After locating the pill in a cupholder of the console, the Troopers continued to search the vehicle "in that same area." Trooper Cook testified that he unlatched and lifted open the closed compartment of the console wherein he discovered a small plastic bag containing a white powdery substance that Trooper Pough testified he "identified to be cocaine." When asked why the search continued after the Adderall pill was discovered, Trooper Pough responded, "[p]robable cause to search the vehicle based on finding the Adderall pill." Trooper Cook described this as an "inventory search." Further search of the vehicle produced a bag of what was presumed to be heroin located in the pocket of the front passenger door. After searching the vehicle, the Troopers discovered a blue silicone capsule, a bag of what appeared to be cannabis and a white chalky substance later identified as crack cocaine on the ground adjacent to the vehicle where defendants Dziamba and Shook had been standing. 
Trooper Cook testified to detaining and searching all three occupants. On cross-examination, he testified that the basis for these investigatory actions was "because of the substances within the vehicle," but he could not recall whether this occurred prior to or subsequent the Troopers' search of the vehicle. Searches of defendants Perell and Shook produced no contraband. Trooper Dziamba, who stated to Trooper Cook that she had a pipe within her bra, was transported to the Livingston State Police barracks to be searched by Investigator Megin Miller.
Investigator Miller testified that prior to conducting a physical search of defendant Dziamba's person, she inquired as to whether she had anything "on [her]." Thereupon, defendant Dziamba produced the pipe and a quantity of psylocibin mushrooms and crack cocaine from her underwear. 
All of the presumed controlled substances were seized, weighed, bagged, labeled and secured in an evidence locker to be turned over to the State Police Bureau of Criminal Investigation. Despite the availability of testing supplies, none of the substances were field [*4]tested, either on the scene or at the barracks, before they were secured and the defendants were arrested and charged with their possession. 

CONCLUSIONS OF LAW
The defendants seek suppression of all tangible evidence seized on grounds that Trooper Pough's stop of the vehicle, removal of defendant Perell therefrom, inquiry as to its contents and the Troopers' search thereof and the persons of the defendants was in violation of their rights under the Fourth Amendment of the United States Constitution, Article I, Section 12 of the New York Constitution and the case law thereunder. "On a motion to suppress physical evidence, the People bear the burden going forward to establish the legality of the police conduct in the first instance" (People v Hernandez, 40 AD3d 777, 778 [Second Dept 2007]; see People v Berrios, 28 NY2d 361, 367-368 [1971]). "If the People establish the legality of the police conduct by credible evidence, the defendant bears the burden of establishing that the arrest was not based on probable cause or that the police conduct was otherwise illegal" (People v Fletcher, 130 AD3d 1063, 1064 [Second Dept 2015]). The court will address the defendants' contentions in turn.
The defendants assert that the color of the inspection sticker, in and of itself, was an insufficient basis upon which to stop the vehicle. They further argue that Trooper Pough's knowledge that defendant Perell's driver's license was suspended ten days prior, without first confirming its present status, was likewise insufficient. 
As summarized by the Court of Appeals, [u]nder the settled law of New York, an automobile stop is a seizure implicating constitutional limitations" (People v Spencer, 84 NY2d 749, 752 [1995]). Automobile stops are lawful only when "based on probable cause that a driver has committed a traffic violation" (People v Robinson, 97 NY2d 341, 349-350 [2001]); when based on a reasonable suspicion that the driver or occupants of the vehicle have committed, are committing, or are about to commit a crime (Spencer, 84 NY2d at 752-753); or "when conducted pursuant to nonarbitrary, nondiscriminatory, uniform highway traffic procedures" (People v Sobotker, 43 NY2d 559, 563 [1978]; People v Hinshaw, 35 NY3d 427 [2020]). As relevant here, Aggravated Unlicensed Operation of a Motor Vehicle in the Third Degree (VTL §511[1]), operating a motor vehicle on a public highway while knowing or having reason to know one's driver's license is suspended, is an unclassified misdemeanor, requiring reasonable suspicion. Inspection violations (VTL §306[b]), on the other hand, are traffic infractions requiring the heightened standard of probable cause.
The Third Department has held that an officer's positive knowledge that a defendant's driver's license was suspended one week prior constituted sufficiently reasonable suspicion to justify his stop of the defendant's vehicle, despite the officer not having first confirmed the defendant's license remained in suspended status (People v Balark, 126 AD3d 1124, 1126 [Third Dept 2015]). The Second and Fourth Departments have reached similar conclusions (see People v Gales, 187 AD2d 606 [Second Dept 1992]; see also People v Haynes, 35 AD3d 1212 [Fourth Dept 2006]). The court finds it appropriate to apply Balark to Trooper Pough's stop of the defendants' vehicle. In the court's view, extending the prior knowledge period to ten days is a de minimis expansion of the Balark holding. On this authority, the court concludes that Trooper Pough's stop was within constitutional limitations. Having so concluded, the court need not address the defendants' contentions pertaining to the inspection certificate.
Turning now to the defendants' contention that Trooper Pough exceeded constitutional constraints when he directed defendant Perell to exit the vehicle, it is well settled that "in light of [*5]the heightened dangers faced by investigating police officers during traffic stops, a police officer may, as a precautionary measure and without particularized suspicion direct the occupants of a lawfully stopped vehicle to step out of the car" (People v Garcia, 20 NY3d 317, 321 [2012]; see also People v Robinson, 74 NY2d 773, 774 [1989] ["The Fourth Amendment of the United States Constitution is not violated when a driver is directed to step out briefly from a lawfully stopped and detained vehicle because the inherent and inordinate danger to investigating police officers in completing their authorized official responsibilities in such circumstances justifies that precautionary action"]). Accordingly, Trooper Pough's request that defendant Perell step out of the vehicle was proper.
Trooper Pough's inquiry of defendant Perell outside the vehicle as to "contents of the vehicle, if there was anything in it that shouldn't be" must be examined under the paradigm established by the Court of Appeals in People v DeBour (40 NY2d 386 [1976]). "In DeBour, the Court of Appeals established a four-tiered framework for evaluating police-citizen encounters. Where a police officer seeks simply to request information from an individual, that level-one request must be supported by an objective credible reason, not necessarily indicative of criminality (People v Hollman, 79 NY2d 181, 184 [1992]). A level-two encounter, also known as the 'common-law right of inquiry,' requires a founded suspicion that criminality is afoot and permits a 'somewhat greater' intrusion than level-one (id. at 184-185). At level-three, a police officer is authorized to forcibly stop and detain an individual where the officer has reasonable suspicion that the particular individual was involved in a felony or misdemeanor (id. at 185). An arrest is authorized at the fourth and final level, where the officer has 'probable cause to believe that person has committed a crime'" (id.) (People v Gates, 31 NY3d 1028, 1029-1030 [2018]). This graduated framework for evaluating the constitutionality of police-initiated encounters with private citizens applies with equal force to traffic stops (Garcia, 20 NY3d at 319.
The People argue that Trooper Pough initially contacted defendant Perell "knowing he had a suspended license," so what "started as a valid inventory search turned into a valid probable cause search" when defendant Perell indicated there was an Adderall pill in the vehicle. First and foremost, this is a blatant misstatement of Trooper Pough's hearing testimony. Trooper Pough testified unequivocally that at the time of the stop he was unaware of the status of defendant Perell's driver's license.
MR. GALVIN: And you understood at a point in time prior, that [defendant Perell] had a license suspension; is that right?
TROOPER POUGH: Yes.
MR. GALVIN: But at the time you pulled him over, you didn't know that he still had that suspension; is that right?
TROOPER POUGH: Yes.
The record before the court contains no evidence or testimony of efforts undertaken by Trooper Pough to ascertain the status of defendant Perell's driver's license prior to inquiring as to the contents of the vehicle. The court can reasonably presume that any such efforts would be plainly apparent upon review of the interaction as captured by his body-worn camera, however [*6]no footage of the interaction was offered by the People at the hearing. Thus, there is no basis upon to conclude that, at any point prior to Trooper Pough's inquiry as to the vehicle's contents, he had anything more than reasonable suspicion that defendant Perell was driving without a license — far short of probable cause to effectuate an arrest justifying an inventory search. As such, the People's assertion that the search of the vehicle "started as a valid inventory search" is rejected.
The People having failed to prove the search was justified at its inception as an inventory search, the court must next examine whether the intrusion was supported by probable cause. Trooper Pough testified that he and Trooper Cook proceeded without consent on the basis of "[defendant] Perell identifying that there was an Adderall pill that was not his in the vehicle." It is undisputed that the source of the Troopers knowledge of the pill was defendant Perell's response to Trooper Pough's inquiry as to whether "there was anything in [the vehicle] that shouldn't be." Trooper Pough testified to no observations or perceptions suggesting to him that there was contraband of any kind or nature within the vehicle, nor did he testify that he suspected defendant Perell of being under the influence of drugs or alcohol. He described this as a "routine question . . . based off the previous encounter I also had with [defendant Perell]," resulting in defendant Perell's vehicle being inventoried and towed. When asked whether drugs were found in the vehicle at that time, Trooper Pough responded that he "can't remember what was found in the vehicle." Thus, the question is whether, under these circumstances, Trooper Pough's inquiry was constitutionally permissible.
A police officer is limited to the degree of intrusion permitted by the circumstances of the case and may not exceed that level of intrusion absent a clear change in the circumstances that would permit a greater intrusion (Hollman, 79 NY2d at 185, 191-192). In holding the "founded suspicion" requirement of De Bour applies equally to traffic stops, the Court of Appeals rejected a proposed rule allowing police officers to routinely ask the occupants of a lawfully stopped vehicle if they are in possession of a weapon (Garcia, 20 NY3d at 322). "[B]y sanctioning, in the interest of public safety, a suspicionless inquiry into whether the occupants of a stopped vehicle have a weapon, we may open the door to less precise inquiries with potential to raise significant privacy concerns. We decline to introduce uncertainty into this area of law when it is unnecessary to do so" (id. at 323-324). One "less precise" inquiry expressly rejected by the Garcia Court, "is there anything in the car I should know about?" (id. at FN1), is the same question asked by Trooper Pough to defendant Perell. Thus, to the extent that Trooper Pough regards this as a "routine question," he is mistaken. 
Trooper Pough's knowledge that defendant Perell's driver's license was suspended ten days prior undoubtedly gave rise to a founded suspicion of criminality, triggering his common-law right to inquire. The purpose of this "limited inquiry," however, is to "either confirm or refute that suspicion" (De Bour, 40 NY2d 210 at 223), not to whimsically and baselessly explore. Thus, when Trooper Pough elected not to take steps to confirm or refute his suspicion that defendant Perell was driving illegally before directing him to exit the vehicle and inquiring as to its contents, he exceeded his limited authority under De Bour. Trooper Pough effectively abandoned his lawful investigation and embarked on one into unrelated criminal conduct without any basis to suspect that the defendants were so engaged, conduct requiring not a mere a founded suspicion, but reasonable suspicion (People v Banks, 85 NY2d 558, 562 ["for a traffic stop to pass constitutional muster, the officer's action in stopping the vehicle must be justified at its inception and the seizure must be reasonably related in scope, including its length, to the [*7]circumstances which justified the detention in the first instance" (emphasis added)]). Insofar as Trooper Pough was without any suspicion, be it founded or reasonable, to inquire as to such conduct, the evidence obtained therefrom, in this case, the items recovered inside and outside the vehicle and from the person of defendant Dziambia, must be suppressed (see People v Gates, 31 NY3d 1028 [2018]); Wong Sun v United States, 371 US 471 [1963]). 
Whether the evidence hereby suppressed would have been inevitably discovered by other means (Nix v Williams, 467 US 431 [1984]; People v Fitzpatrick, 32 NY2d 499 [1973]) was not developed by the People at the hearing nor raised in their papers, and as such, will not be considered by the court (see People v Hatchett, 196 AD3d 431 [First Dept 2021] [holding denial of suppression on grounds not raised by the People constitutes reversible error]; see also People v Bonilla, 211 AD3d 614, 617 [First Dept 2022]).
For the reasons set forth hereinabove, it is hereby
ORDERED that the defendants' motion for suppression of all physical evidence recovered on November 16, 2024 is hereby granted; and it is further
ORDERED that jury trial on the indictment, scheduled to commence on November 12, 2025, is adjourned; and it is further
ORDERED that the parties are directed to appear before the court for further proceedings on November 12, 2025 at 11:00 a.m.
This constitutes the decision and order of the court.
Dated: November 3, 2025
Hudson, New York
Hon. Brian J. Herman
Papers and Evidence Considered:
1. Indictment No. 70016-25
2. Notice of Omnibus Motion of Shane A. Zoni, Esq., dated May 21, 2025
3. Affirmation of Shane A. Zoni, Esq., affirmed May 21, 2025, with exhibits
4. Affirmation in Opposition of Carlyanne Cicero, Esq., affirmed June 2, 2025, with exhibits
5. Grand Jury Minutes, January 31, 2025, with exhibits
6. Notice of Motion of William J. Galvin, Esq., dated July 21, 2025
7. Affirmation of William J. Galvin, Esq., affirmed July 21, 2025, with exhibits
8. Notice of Motion of Dennis W. McEvoy, Esq., dated September 9, 2025
9. Affirmation of Dennis W. McEvoy, Esq., affirmed September 9, 2025
10. Proposed Findings of Fact and Conclusions of Law of Zachary P. Halperin, Esq., with exhibits, dated October 23, 2025
11. Memorandum of Law of William J. Galvin, Esq., with exhibits, dated October 23, 2025
12. Proposed Findings of Fact and Conclusions of Law of Dennis W. McEvoy, Esq., dated October 24, 2025
13. Memorandum of Law of Carlyanne Cicero, Esq., dated October 23, 2025
14. People's hearing exhibit 1
15. Defendants' hearing exhibits A, C

Footnotes

Footnote 1: Defendant Shook.

Footnote 2: Defendants Dziamba, Perell and Shook.