OPINION OF THE COURT
Joseph Jaspan, J.
The defendants, in a pretrial motion, seek to add a new dimension to the doctrine of collateral estoppel as applied to criminal cases.
The defendants assert that a prior determination in an arbitration proceeding is determinative of a critical factual *694 issue in this case, thereby precluding a successful prosecution. They move for a dismissal of the indictments against them for reasons associated with the Grand Jury proceedings (CPL 190.30, subds 5 and 6) and in the interests of justice (CPL 210.40).
FACTS
William Overton and Laura Klein are each charged with the crimes of grand larceny in the second degree and falsifying business records in the first degree. The indictment alleges that between September, 1975 and December, 1976, the defendants, acting in concert, stole moneys in excess of $1,500 from the Kings Park Psychiatric Center of the State of New York ("Kings Park”), and that they also, acting in concert and with intent to defraud in order to commit the crime of larceny, made false entries upon the business records of Kings Park, to wit, monthly time and work attendance forms.
Kings Park is a mental hygiene hospital operated by the State of New York and Overton and Klein were employees during the relevant period.
The substance of the larceny charge is that Klein submitted time and attendance sheets showing that she worked certain hours for which she was paid, whereas, in fact, she was then attending nursing school at another location and that Overton aided Klein by approving and submitting these inaccurate and false "business records”.
Until October 28, 1977, Ms. Klein was employed as a mental hygiene therapy aide. In September, 1975 she was accepted at the School of Nursing at Central Islip Psychiatric Center and thereupon applied to her charge nurse and with her consent to the Chief of Service for a duty schedule which would include weekend work and thereby permit attendance at classes during a portion of the workweek, a practice apparently indulged in with other employees. When this request was denied, she requested and received an assignment to another unit in the hope that it would more readily permit an accommodating schedule. Ms. Klein contends that an arrangement was concluded under which she would use lunch, vacation, leave credits and weekend work to compensate for the time "lost” at school. The defendant further contends that to avoid complications arising from the performance of her duties during what was believed to be premium time the records showed Ms. Klein as an employee working five eight-hour *695 shifts during the week, a factual impossibility. These admittedly inaccurate records were accepted and approved by the defendant, Overton, who asserts that they were consistent with existing practice for other students.
When these practices came to the attention of the hospital, via an anonymous telephone call and letter, a notice of discipline dated April 25, 1977 was served on each of the defendants in accordance with the provisions of a collective bargaining agreement between the Civil Service Employees Association, Inc. (CSEA), and the State of New York. Thereafter, in accordance with the contract provisions, separate arbitration proceedings were initiated as to each defendant.
During the pendency of these proceedings defendant Klein asked for a shift adjustment, as a matter of contractual right, so that she could conclude her nursing studies. When this request was refused she commenced a CPLR article 78 proceeding in this court. The proceeding was settled by written stipulation which read as follows:
"This case (Notice of Discipline dated April 25, 1977) shall be settled for the resignation of Ms. Laura Klein. The grievant’s signature below signifies her resignation, effective October 28, 1977.
"The management of Kings Park Psychiatric Center agrees, by signing below, to accept Ms. Klein’s resignation which terminates this proceeding and any contemplated administrative action against Ms. Klein under the Institutional Services Unit Agreement.
"Ms. Klein agrees to withdraw the current, pending civil action brought against the facility in Supreme Court, and further agrees not to institute or reinstitute civil action in any court relating to this proceeding.
"Ms. Klein will receive the balance of her vacation accruals.”
Ms. Klein has since completed her nursing studies but has been denied her license as a registered nurse pending the outcome of this case.
A proposal to transfer Overton to another State institution in settlement of the charges was refused by him and the arbitration proceedings continued before Professor Maurice C. Benewitz for seven days during which many witnesses testified as to the work practices at the hospital and the adjustments made to accommodate other students.
*696 Mr. O’Neill, as Chief Supervisor of Nurses, testifying with respect to Ms. Klein’s work schedule said he was aware of it and added "I said well if she’s working 16 hours on Saturdays and Sundays, that’s O. K. I thought no more about it. I had done that before.”
A 36-page report by the arbitrator concluded that while there may have been carelessness, a failure to follow clear written directions and perhaps incompetence, Overton "was not guilty of conspiracy to steal from and defraud the State”.
The report further concluded that the work schedule claimed by defendants was not unique in the institution and that the State did not prove that Laura Klein "did not work 40 hours a week or use valid leave credits to reach 40 hours.” * * * "[T]he evidence strongly supports the probability that Ms. Klein worked her time as claimed, rather than the opposite.”
While Overton was suspended without pay for one month and reduced in grade for incompetent supervision and record keeping, the finding of the arbitrator was favorable to both defendants on the issue of theft of services and conspiracy to defraud the State.
The award had become final since no application was made within 90 days after its delivery to vacate or modify it. (CPLR 7511.)
THE LAW
Collateral estoppel simply means that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot be litigated between the same parties in any future lawsuits. This principle has been applied to criminal cases in United States v Oppenheimer (242 US 85); People v Lo Cicero (14 NY2d 374) and reaffirmed as an established rule of law embodied in the Fifth Amendment guarantees against double jeopardy in Ashe v Swenson (397 US 436). Threshold questions are whether there is an identity of issues and an identity of parties. The guidelines for making these determinations are set forth in Ashe where the court wrote (p 444): "the rule of collateral estoppel in criminal cases is not to be applied with the hypertechnical and archaic approach of a 19th century pleading book, but with realism and rationality.”
The identity of issue is easily resolved by the arbitrator’s *697 findings that the defendant Klein was not engaged in a wrongful taking of the property from the State. This precludes by definition (Penal Law, § 155.05) a conviction for larceny or for the falsifying of records to conceal that crime.
The identity of parties is a slightly more difficult issue. The defendant Klein was not a party to the arbitration proceeding when this report was issued. But that is a matter of form rather than substance. Overton was charged with acting in concert with Klein and the arbitrator logically dealt with the underlying charge of larceny before determining whether Overton participated in it. Accordingly he made specific findings in favor of Klein. Further, a ruling favorable to an indictee should be extended under the doctrine of collateral estoppel to a coindictee, where a contrary holding would present a classic example of unfairness. (State v Gonzales, 22 Crim L Rep 2346.) The lack of mutuality is no bar to such a holding. (Blonder-Tongue v University Foundation, 402 US 313, 326.)
By coincidence the State of New York is the employer at Kings Park and the party in whose name this criminal action is brought. But this apparent conformity on the issue of identity is not the compelling point. What is evident is that the issue in both the arbitration and criminal proceedings is the time and attendance dispute between the defendants herein and Kings Park as the employer and as complainant. Its role as complainant is one in which it must indulge by reason of the provisions of subdivision (b) of section 7.21 of the Mental Hygiene Law.
An examination of the facts in this case with the realism and rationality suggested by the court in Ashe, leads inevitably to the conclusion that there is an identity of issues and parties.
There remains for consideration the question as to whether the award in an arbitration proceeding is a binding predicate.
Arbitration has the sanction of law and the finality of a judgment. (CPLR art 75.) It has been held that "[e]very award [in arbitration] rendered in compliance with all legal requirements is a complete, final and binding determination of a controversy which may not be disturbed, unless the statutory grounds for doing so exist”. (Matter of Springs Cotton Mills [Buster Boy Suit Co.], 275 App Div 196, 199, affd without opn 300 NY 586.)
*698 The policy of the State is to encourage the use of arbitration as a vehicle for the determination of labor grievances involving public employees. (Board of Educ. v Associated Teachers of Huntington, 30 NY2d 122; Associated Teachers v Board of Educ., 33 NY2d 229; Civil Service Law, § 203.) It is noted parenthetically that this policy extends to disputes involving employees of nonprofit hospitals. (Labor Law, § 716.) The Supreme Court of the United States has established a strong presumption favoring arbitration. (Nolde Bros, v Bakery Workers, 430 US 243, 254, reh den 430 US 988.) Arbitration is an acceptable, and in many situations, a favored vehicle for the resolution of disputes and should be accorded significant weight.
It is not surprising, therefore, that the principle of res judicata has been applied to administrative hearings. (Matter of Evans v Monaghan, 306 NY 312, 323-324.) The court there wrote (p 323): "Security of person and property requires that determinations in the field of administrative law should be given as much finality as is reasonably possible.”
In Bird v Meadow Gold Prods. Corp. (60 Misc 2d 212), obviously a civil suit, the court, citing Matter of Springs Cotton Mills (supra), held that the doctrines of res judicata and collateral estoppel apply to arbitration awards.
An extension of the foregoing legal principles to the case at bar permits of a holding that an award in a bona fide arbitration proceeding can be the basis for invoking the doctrine of collateral estoppel under the constitutional requirements of the Fifth Amendment and principles of fundamental fairness.
It could have been argued that the defendants should not choose their forum and opponent and thereby avoid indictment and thereupon criminal charges. But the defendants did not opt for arbitration. It was mandated by contract and initiated by the State. Nor were the defendants put in a more favorable position with respect to the quantum of proof necessary to prove the charges against them. In the arbitration, the employer was unable to prove by even a fair preponderance of the evidence that there was a wrongful taking or that business records were falsified. The People in a criminal case, relying upon the same witnesses who testified at the arbitration would have to prove the charges against the defendants beyond a reasonable doubt.
The issue tried at arbitration was not collateral but directly *699 related to the question of guilt or innocence. The outcome of the criminal charges herein uniquely turned upon the prevalent labor practices previously litigated by the persons most familiar with them.
The court concludes that the People are estopped from relitigating the time and attendance issues, and the findings of the arbitrator are determinative of the issue of wrongful taking.
This holding is based upon a finding that a full and fair opportunity was afforded to the employer State, to participate as a litigant. (People v Rasero, 62 AD2d 845.) The record before this court reflects a lengthy proceeding in which a large number of witnesses testified. The State of New York (Kings Park Psychiatric Center) was represented by Sheldon S. Kramer, Principal Agency Labor Relations Representative, and the employee by union counsel who now represents both of the defendants herein. The detailed 36-page arbitration report clearly indicates that this was not a pro forma or "sweetheart” proceeding designed to accomplish a preordained result. The issues were contested and fully tried and the findings of the experienced arbitrator are entitled to full faith and credit in our courts.
This court has considered the ruling in Alexander v Gardner-Denver Co. (415 US 36) and finds it inapplicable. In that case, the plaintiff filed a grievance under a collective bargaining agreement which contained a nondiscrimination clause. Prior to a determination by an arbitrator, the plaintiff also filed a charge of racial discrimination pursuant to title VII of the Civil Rights Act of 1964 (78 US Stat 241; 42 US Code, § 2000e et seq.). The arbitration was resolved in favor of the employee and the litigated issue was whether the arbitrator’s decision was binding, thereby precluding the afore-mentioned suit. The Supreme Court held (p 47) that the "legislative enactments in this area have long evinced a general intent to accord parallel or overlapping remedies against discrimination”. It concluded that, in general, submission of this type of claim to one forum does not preclude a later submission to the other.
But, Alexander v Gardner-Denver Co. was not decided against the background of the Fifth Amendment guarantee against double jeopardy and is thus distinguishable from Ashe v Swenson (397 US 436, supra) which involved a criminal prosecution.
*700 This court also notes United States v Wheeler (435 US 313) which authorizes prosecution by separate sovereigns but not by creations emanating from the same sovereignty or by nominally different prosecuting bodies.
Since the People are estopped from introducing evidence of the alleged larceny which forms the basis for the indictment against each of the defendants, it would be palpably unfair to subject them to the expense and ordeal of a trial which by reason of the ruling herein must be resolved in their favor.
The power to dismiss the indictment in the interest of justice provides a suitable vehicle for an appropriate disposition of this case. The parties have waived a Clayton hearing. The motion to dismiss pursuant to CPL 210.40 is therefore granted.
[Portions of opinion omitted for purposes of publication.]