■ In the Matter of DENISE TUITE, Petitioner, v JAMES H. SHAW, JR., AS Justice of the Supreme Court of the State of New York, et al., Respondents. —In this proceeding pursuant to CPLR article 78 petitioner seeks to prohibit her retrial on a three-count indictment charging her with the criminal sale of a controlled substance (amphetamine) in the second degree and criminal possession of a controlled substance in the second and third degrees on June 10, 1974. Petitioner had been indicted on four separate indictments and arraigned in June, 1974. Each indictment consisted of three counts charging criminal sale in the second degree and criminal possession in the second and third degrees on June 10, 1974, March 1, 1974, February 6, 1974 and January 24, 1974. The four indictments were consolidated for trial. Petitioner's trial began on June 3, 1975 and lasted two weeks, during which 17 witnesses were heard. The jury was charged by the court on June 18, 1975, beginning at 11:30 A.M. The charge took about an hour and a half, after which the jury retired to have lunch and to deliberate. Thereafter, it returned for an additional charge on the subject of reasonable doubt. The jury's further request that the testimony of the main prosecution witness be read to it was granted by the court. Later the jury went out for dinner. At 10:45 P.M. the jury sent a note to the court which the court marked as its own Exhibit 5. It reads: "To Mr. Justice Shaw, We have reached decisions on the first nine counts of January 23rd, February 6th and March 1st. We are Hopelessly Deadlocked on the last three counts of June 10th, 1974. Please Advise. Sincerely Joseph Blaney, Foreman." When the court asked

the jurors for a show of hands on whether they were hopelessly deadlocked, about 9 or 10 of them indicated that they would like to deliberate further, one stating that there was a possibility of their reaching a conclusion. Thereupon the court said: "Allright. Allright. There's a sufficient number of persons who would like to further deliberate as I have indicated. About nine or ten out of the nine *[sic]* of you, and so would you go back and see if you can reconcile any differences of view that you have with regard to these last three counts. If you cannot do so in what you consider a reasonable period of time, would you return to the Courtroom, and I will tell you now what I will do. I will then take a partial verdict, what you have decided on, and I will make whatever necessary rulings are required. All right? but go and see what you can do." The jury left the courtroom at 10:55 P.M. Petitioner's counsel in his affidavit in support of the petition states, "Fifty minutes later, (without any communication from the jury) the Court directed that the jury be brought back to the Courtroom" and "asked the jury if the situation was still the same". The District Attorney does not dispute this assertion; indeed, he agrees with it, for he asserts: "As the petitioner has set forth the relevant facts, and appended a copy of the minutes relative to the declaration of the mistrial, no extensive restatement is included herein." The excerpt from the record contained in the sworn petition does not indicate why the jury returned to the courtroom at 11:50 P.M. It reads: "COURT OFFICER: Jury is entering. (The time is now 11:50 P.M.) THE CLERK: Let the record show all the jurors are present. Assistant District Attorney is present. Defendant is present with counsel. * * * THE COURT: Mr. Foreman, members of the Jury, it's approximately five minutes to midnight and you have been deliberating since approximately three o'clock this afternoon, perhaps a little earlier or later. So, at this point, I would like to know if the situation still stands as of the communication which is Exhibit 5 and says, 'We have reached decisions on the first nine counts of January 23, February 6th, March 1st, 1974. We are hopelessly deadlocked on the last three counts of June 10, 1974.' Is the situation still as it was then, Mr. Foreman? FOREMAN: Yes, Your Honor." Thus, it would appear that the court's act in *sua sponte* summoning the jury to the courtroom at 11:50 P.M. was in disregard of the court's instruction to them some 55 minutes earlier that they continue their deliberations in an effort to reconcile any differences of view they had with regard to the last three counts and that if they could not do so in what *they* considered a reasonable time they should return to the courtroom. Thus, their return to the courtroom was not occasioned by any indication from them that they could not reach agreement if allowed to continue their deliberations. When the foreman responded "yes" to the court's inquiry as to whether the situation was still as it was when the foreman sent in his note claiming there was a hopeless deadlock in the jury on the June 10 counts, the court, without inquiring as he had on the prior occasion if the other jurors agreed with the foreman, directed the clerk to take the verdicts as to the counts on which the jury had reached a verdict and thereafter discharged the jury, saying: "Mr. Foreman, ladies and gentlemen, the hour is late, I'll say no more then at this point than to thank you for your services, for your efforts in this case, and you are discharged with the appreciation of the Court and the country." Defense counsel then recorded his objection to the discharge of the jury on the ground that its deliberations had not been for an unduly long time, only five and a half or six hours, after a two-week trial, that it had reached a verdict on nine of the 12 counts, and that it had not been asked by the court on the second occasion whether it could reach a verdict if given more time.

Nowhere in the record of the jury's discussions with the court or of the court's taking the partial verdict and discharging the jury as to the fourth indictment is there any statement by the court of its grounds for discharge of the jury. CPL 310.60, which governs discharge of a jury before rendition of a verdict, and the effect of such a discharge, provides in relevant part as follows: "1. A deliberating jury may be discharged by the court without having rendered a verdict only when: (a) The jury has deliberated for an extensive period of time without agreeing upon a verdict with respect to any of the charges submitted and the court is satisfied that any such agreement is unlikely within a reasonable time." CPL 310.70 which governs the rendition of a partial verdict, and the effect thereof, provides in relevant part as follows: "1. If a deliberating jury declares that it has reached a verdict with respect to one or more but not all of the offenses submitted to it * * * the court must proceed as follows: (a) If the possibility of ultimate agreement with respect to the other submitted offenses * * * is so small and the circumstances are such that if they were the only matters under consideration the court would be authorized to discharge the jury pursuant to paragraph (a) of subdivision one of section 310.60, the court must terminate the deliberation and order the jury to render a partial verdict with respect to those offenses * * * upon which * * * it has reached a verdict; (b) If the court is satisfied that there is a reasonable possibility of ultimate agreement upon any of the unresolved offenses * * * it may either: (i) Order the jury to render its verdict with respect to those offenses * * * upon which * * * it has reached agreement and resume its deliberations upon the remainder; or (ii) Refuse to accept a partial verdict at the time and order the jury to resume its deliberation upon the entire case." Here, the trial court at about 10:45 P.M., when it received the foreman's note elected to follow the second alternative in CPL 310.70 (subd 1, par [b]) by instructing the jury to return to the courtroom only if, after what *it* (the jury) considered a reasonable time, it could not reach agreement on the three counts upon which it had not then been able to reach a verdict. Here, as in *Matter of Tartt v Browne* (48 AD2d 900, 901), "There is nothing in this record to indicate that the jury was unlikely to reach a verdict within a reasonable time." In that case, in granting the application in the nature of prohibition, we said, "The statute should be followed," adding that "to try [the petitioner and his codefendant] again upon the same indictment would violate their constitutional right not to be put in jeopardy twice for the same offense (see *People ex rel. Brinkman v Barr,* 248 NY 126)." While in *Tartt* the trial court's disregard of the statute's requirements was clear on the record, here the trial court's failure to comply with the provision of the statute is demonstrated both by its failure to state its reasons for calling the jury in to take their partial verdict and to discharge them as to the counts on which they had as yet reached no verdict, and by the fact that the record negatives any inference that the jury had deliberated on those counts for an "extensive" period of time without agreeing upon a verdict, or even that the court was satisfied that any such agreement was unlikely. The trial here had lasted two weeks. The jury had deliberated on the 12 counts for about five and one-half or six hours in all. It had reached agreement on nine of the counts. It was allowed only 55 additional minutes to deliberate to seek agreement on the remaining three counts before it was summoned back by the trial court to have its partial verdict taken and to be discharged. Of course, "The time of deliberation alone is not a controlling consideration; each case must be measured according to its complexities" *(Matter of Bisceglia v County Ct. of County of Rensselaer,* 44 AD2d 619, 620), but here,

unlike *Bisceglia* where there was a one-count indictment, there is no showing that the issues were clear cut; nor was the continuance of the disagreement evident. The claim in the foreman's note that the jury was hopelessly deadlocked had been disavowed by nine members of the jury and the allegations of the note were not affirmatively readopted by the jury when the trial court summoned them back to take the partial verdict and to discharge them over the objection of the defense counsel. In *Bisceglia* the jury at about 2:30 A.M. affirmed the foreman's declaration that he did not think a verdict could be rendered with further deliberations, and when the jury was polled each juror indicated he or she would not change his or her mind even with further deliberations. Despite that fact, the court there sent the jurors out for further deliberations and discharged them only when at 3:18 A.M. they, *on their own initiative,* returned and indicated they would not be able to reach a verdict. Here, when first polled by a show of hands as to whether they were, as the foreman had written, "hopelessly deadlocked", nine jurors indicated they believed a verdict could be reached on the undecided-upon three counts after further deliberation; and it was not they, but the trial court that was responsible for their returning to the courtroom in less than an hour to be queried ambiguously as to whether the situation still stood "as of the communication which is Exhibit 5". Clearly, these facts do not suffice to sustain an inference that the jury had deliberated on the undetermined three counts for an extensive period of time or that the court was satisfied that any jury agreement on them within a reasonable time was unlikely. Hence, here, as in *Tartt (supra),* we find the trial court did not comply with the requirements of the applicable provisions of the CPL, and a retrial of the petitioner on the remaining indictment would violate her constitutional right not to be put twice in jeopardy for the same offense. In view of the grave potential to the People from an improperly declared mistrial, trial courts should be most vigilant to comply with the applicable statutes in every detail before discharging a jury for failure to agree. We find no merit in the contention of the Attorney-General that an article 78 proceeding does not lie. We found such a procedure proper in *Tartt (supra).* The application is granted, without costs, and the indictment charging petitioner with criminal sale in the second degree and criminal possession in the second and third degrees on June 10, 1974, is dismissed, petitioner having been acquitted by the jury on all of the other indictments. Gulotta, P. J., Rabin, Christ and Shapiro, JJ., concur.