■ THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v ERNEST BOYNTON, Respondent.—Appeal by the People from an order of the Supreme Court, Queens County, dated February 17, 1978, which, upon acceptance of a verdict of guilty as to the third count of the indictment, dismissed the remaining or first count thereof, upon which the jury had failed to agree. (The second count was never submitted to the jury, it having been previously dismissed.) Order reversed, on the law, the first count of the indictment is reinstated, and the case is remanded to Criminal Term for further proceedings in accordance herewith. The trial court dismissed the second count of the three-count indictment lodged against this defendant after the close of the evidence and submitted the two remaining counts to the jury for their determination. After due deliberation, the jury returned a guilty verdict on the count alleging that the defendant had endangered the welfare of a child (the third count of the indictment), but reported itself inextricably deadlocked on the charge of rape in the first degree (the first count). At this juncture, the court, *sua sponte,* dismissed the first count of the indictment stating: "Under the circumstances, the Court will accept the verdict of the jury with respect to the Third Count. As I said earlier, I am very frank to tell you that these are 12 good minds, and they gave an awful lot of consideration to this case, and I cannot see myself ordering a trial before another jury and saddle the State with the expense. I want you to know it costs the State a minimum of $25,000 a day." No other explanation for the dismissal was offered. The People appeal. In our opinion, the order appealed from must be reversed. The only statute which even colorably authorizes a dismissal such as the one before us is CPL 210.40 (subd 1), which empowers a court to dismiss an indictment or any count thereof when "such dismissal is required as a matter of judicial discretion by the existence of some compelling factor, consideration or circumstance clearly demonstrating that conviction or prosecution of the defendant upon such indictment or count would constitute or result in injustice." This court has previously held that a dismissal pursuant to CPL 210.40 requires notice to the People and an opportunity for a hearing *(People v Clayton,* 41 AD2d 204), but neither was provided in the instant case. This defect alone would constitute reversible error *(People v Trottie,* 47 AD2d 751). The record herein is devoid of any facts which even remotely suggest that a retrial would work an injustice upon this defendant. The dismissal of the rape count in the absence of such a showing was clearly improper (cf. *People v Geller,* 65 AD2d 774; *People v Kwok Ming Chan,* 45 AD2d 613). Acquittal, like conviction, requires a unanimous verdict in this State, and were the logic of Criminal Term to be applied generally, a "hung" jury would be as beneficial to a defendant as a verdict of not guilty. CPL 310.60 and 310.70 are clearly to the contrary and contemplate a retrial of the defendant under circumstances such as the present. Additionally, if the trial court believed that the evidence adduced

by the People was legally insufficient to sustain a conviction, it should have dismissed the remaining count of the indictment on that ground, rather than speculate on the cost-effectiveness of a second trial. For all of these reasons there should be a reversal. Although not briefed by the parties, there is an additional factor in this case which remains to be considered, as the prospect of a possible retrial of this defendant presents a difficult double jeopardy issue which has yet to be resolved. In fact, had this precise case come before us as recently as one year ago, we would have been compelled to dismiss the appeal on constraint of *People v Brown* (40 NY2d 381, cert den 429 US 975, mot for rearg den 42 NY2d 1015, cert den 433 US 913) and *People v O'Neill* (59 AD2d 540). However, the situation today is different. In the *Brown* case (p 391, *supra),* the Court of Appeals, following the principles set forth in *United States v Jenkins* (420 US 358) and its companion cases *(United States v Wilson,* 420 US 332 and *Serfass v United States,* 420 US 377), held: "On the basis of these three cases we conclude that the Supreme Court has formulated a double jeopardy rule—albeit what may be characterized as a mechanical rule—which precludes the People from taking an appeal from an adverse trial ruling *whenever such appeal if resolved favorably for the People might require the defendant to stand retrial—*or even if it would then be necessary for the trial court 'to make supplemental findings' *(United States v Jenkins,* 420 US 358, 370, *supra). Double jeopardy principles will bar appeal unless there is available a determination of guilt which without more may be reinstated in the event of a reversal and remand.* Application of such rule to the provisions of CPL 450.20 (subd 2) permitting the People to appeal from a trial order of dismissal renders that section unconstitutional except in the instance where disposition of the motion is reserved until after the jury verdict has been returned." (Emphasis supplied.) A similar rationale would be applicable to the case at bar. Since that time, however, the Supreme Court of the United States has had occasion to reconsider its *Jenkins* decision and has, in fact, explicitly overruled it in *United States v Scott* (437 US 82). Contemporaneously, the Court of Appeals has had occasion in *People v Key* (45 NY2d 111) to reassess its prior decision in *People v Brown (supra).* If nothing else, these two recent cases, and others, demonstrate that the mechanical test of *Jenkins* and *Brown (supra)* is no longer valid and has been replaced by a functional test in which the ultimate decision must rest on whether a second trial will violate any of the defendant's rights protected by the double jeopardy clause. It is this "new" test which we must apply here. In the course of so doing, it is of the greatest importance to note that the first count of the instant indictment was *not* dismissed on the ground that the prosecution's case was legally insufficient, as any dismissal on such a ground would be tantamount to an acquittal and would operate as a bar to any further prosecution (see *Burks v United States,* 437 US 1; *Greene v Massey,* 437 US 19). It is well established that the prosecution is only entitled to one opportunity to mount its case against a defendant, and that its failure to do so adequately will not inure to the latter's detriment. "The Double Jeopardy Clause forbids a second trial for the purpose of affording the prosecution another opportunity to supply evidence which it failed to muster in the first proceeding" *(Burks v United States, supra,* p 11). In the instant case, however, the record reveals that the trial court dismissed the first count of the indictment primarily because it wanted to spare the State the expense of a second trial and (apparently) because it formed the opinion that a second jury would not have been superior to the first in terms of its wisdom or industry. The sufficiency of the prosecution's evidence was thus never

mentioned, nor did the court determine the defendant to be innocent of the underlying count. In sum, therefore, there was no dismissal on the ground of legal insufficiency, nor was there any factual determination which was favorable to the defendant.* This much established, the next question to be considered is this: would a second trial impermissibly deprive this defendant of his "valued right to have his trial completed by [the first] tribunal" (see *Wade v Hunter,* 336 US 684, 689). An affirmative answer cannot be sustained. The record discloses that the first count of the indictment was dismissed by the court only after the jury had deliberated from 12:40 P.M. on February 17, 1978 until 12:30 A.M. of the next day (with sufficient time for meals) and had reported itself to be hopelessly deadlocked. The jury was then polled by the court and its representation as to the deadlock was confirmed (cf. *Matter of Tuite v Shaw,* 49 AD2d 737). At this point, the court had before it what has recently been termed "the classic basis for a proper mistrial" *(Arizona v Washington,* 434 US 497, 509). In fact, had the trial court merely proceeded to declare a mistrial at this juncture, it is doubtful that anyone would have questioned the right of the People to retry this case. In our view, once Criminal Term properly found the jury to be hopelessly deadlocked, the doctrine of " 'manifest necessity' " required the declaration of a mistrial, whether the Trial Justice knew or appreciated this fact, and whether or not he explicitly so found (see *Arizona v Washington, supra,* p 516). The defendant's right to proceed to a verdict with the first jury terminated at this juncture and had to give way to "society's interest in giving the prosecution one complete opportunity to convict those who have violated its laws" *(Arizona v Washington, supra,* p 509; *Wade v Hunter, supra,* p 689). Clearly, then, this is not a case in which the prosecution has sought to use its superior resources to wear the defendant down by submitting the matter to successive tribunals in the hopes of securing an eventual conviction (see, generally, *United States v Scott,* 437 US 82, 87, *supra; Swisher v Brady,* 438 US 204). In short, there was no prosecutorial overreaching in the instant case, merely trial-type error by the Justice presiding in dismissing the first count rather than declaring a mistrial with respect thereto pursuant to CPL 310.70 (subd 1, par [a]). At least in the absence of an acquittal or a termination based on a ruling that the prosecution's case was legally insufficient, no interest protected by the double jeopardy clause precludes a retrial when reversal is predicated on trial error alone (see *Burks v United States,* 437 US 1, 14-15, *supra; cf. Sanabria v United States,* 437 US 54). Thus viewed, any double jeopardy claim in the case at bar would be purely formalistic, one of the kind that has been consistently rejected of late by the United States Supreme Court. Moreover, no legitimate right of the defendant would be sacrificed by a retrial, as the dismissal herein was actually the result of an erroneous posttrial order by the Justice presiding. The trial itself terminated when the jury was unable to agree upon a verdict, and the subsequent dismissal could not alter the fact that the jury had neither found the defendant guilty of the first count, nor voted his acquittal. Both the defendant and the State are entitled to have one complete trial which terminates in a verdict, or, at the very least, a finding that the People's case is legally insufficient to sustain a conviction. In the absence of any such finding here, and in the absence of overreaching by the prosecution (see *People v Key,* 45 NY2d 111, 119, *supra),* we hold that this

---

* The fact that the Trial Justice may have contemplated an end to the prosecution is not, strictly speaking, determinative (see *People v Key,* 45 NY2d 111, 119).

defendant's rights under the double jeopardy clause will not be offended by subjecting him to a new trial (see *Swisher v Brady, supra,* p 219). O'Connor, J. P., Gulotta and Margett, JJ. concur.

Cohalan, J., dissents and votes to affirm the order, with the following memorandum: In light of the double jeopardy clauses in the Fifth Amendment to the United States Constitution and section 6 of article I of the New York Constitution, it would, in my view, be an exercise in futility to expose the defendant to a second trial. Right or wrong, and there is little doubt in my mind that he acted improperly—or at least failed to spread a proper reason for dismissal of the rape charge on the record, the Trial Judge effectively closed the door to a retrial by dismissing the first count of the indictment. The majority concedes that, except for the recently decided case of *United States v Scott* (437 US 82); *People v Brown* (40 NY2d 381, cert den 429 US 975, mot for rearg den 42 NY2d 1015, cert den 433 US 913) would control and the defendant would be free of the rape count in the instant indictment. I fail to see how the rationale of the *Scott* case *(supra)* affects the situation at hand. There the defendant moved before trial in Federal District Court and twice during the trial for dismissal of two counts of a three-count indictment, on the ground that his defense had been prejudiced by preindictment delay. At the close of all the evidence the court granted his motion. The United States Court of Appeals affirmed. In reversing and remanding for a new trial, the Supreme Court stated (pp 98-99): "We think that in a case such as this the defendant, by deliberately choosing to seek termination of the proceedings against him on a basis unrelated to factual guilt or innocence of the offense of which he is accused, suffers no injury cognizable under the Double Jeopardy Clause if the Government is permitted to appeal from such a ruling of the trial court in favor of the defendant * * * we conclude that the Double Jeopardy Clause, which guards against Government oppression, does not relieve a defendant from the consequences of his voluntary choice." Thus, what was established in *Scott* is that where a defendant himself seeks to have a trial terminated without any evidence as to his guilt or innocence being presented to court or jury, an appeal by the government from his successful effort to do so does not call the double jeopardy clause into play. In such a position a defendant is not relieved of the consequences of his own choice. Two factors distinguish the instant case from *Scott.* First, the defendant was convicted of a lesser count of the indictment; in *Scott* the count that went to the jury resulted in an acquittal. Second, in *Scott* defendant himself made the motion to dismiss before the jury even heard a word of testimony on the dismissed counts; at bar, the Trial Judge acted on his own initiative after the jury declared itself hopelessly deadlocked on the rape count. We cannot pluck a chord of the Trial Judge's memory to ascertain his ratiocination; nor would it avail us if we could. It is, however, a fair inference that in view of the relatively innocuous crime of endangering the welfare of a child (a class A misdemeanor) as against the enormity of the crime of rape in the first degree (a class B felony), he reasoned that the chance of convicting on the felony count was too remote for further consideration. In effect, he dismissed the count for insufficiency of the trial evidence. Inartful and imprecise as his statement was, I think his mistake should enure to the benefit of the defendant. The inference gains strength when we note that the defendant took the stand in his own defense. He admitted copulating with the female (who was just under 17 years of age) but insisted that there was no "forcible compulsion", a necessary element of rape in the first degree as charged in the indictment (see Penal Law, § 130.35, subd 1). At most, if his defense had been credited by the jury, which deliberated for almost 12 hours, he could

have been found guilty only of sexual misconduct (see Penal Law, § 130.20, subd 1), the successor to the crime of statutory rape in the former Penal Law, or of rape in the third degree under the current law. But neither of these latter crimes was charged in the indictment; nor is either a lesser included crime of rape in the first degree. The double jeopardy rule appears to be floundering in a morass of uncertainty. *Stare decisis* is more honored in the breach than in the observance, as is evidenced by the sudden overturn (by a five to four vote in *United States v Scott, supra*) of *United States v Jenkins* (420 US 358), decided unanimously over three years before at a time when it included eight of the nine members of the present Bench. In the four cases that were handed down simultaneously with *Scott*,[1] the Supreme Court was obliged to walk a fine line. Different fact situations required different treatments. A habeas corpus proceeding in *Crist v Bretz* (437 US 28) furnishes a good example. Bretz and a codefendant were haled into Montana State court and were charged, *inter alia*, in a criminal information with obtaining money and property by false pretenses. A jury was selected and sworn. At that point and before a witness was sworn, the defendants drew the attention of the court to the allegation in the false pretenses charge that the illegal conduct at issue began on January 13, 1974 and moved that the People's evidence be limited accordingly. By that time the subject statute had been repealed. The prosecutor moved to amend to have the date read January 13, 1973. His motion was denied. After the prosecutor filed a superseding information, he moved the case for trial. The second trial was held and resulted in a conviction. The habeas corpus proceeding was then instituted. Ultimately, the Supreme Court held that Bretz was exposed to jeopardy the moment the original jury was sworn, and struck down the Montana statute that required the swearing of a witness before jeopardy attached. The tactic pursued by Bretz succeeded. Had he and his codefendant moved to dismiss the false pretenses count, they might well have rendered themselves amenable to the principle enumerated in *Scott,* as noted above. By forcing the prosecutor to move to dismiss the information, the habeas corpus proceeding resulted in success for the defendants as to the false pretenses count. As in the Federal cases, so in *People v Key* (45 NY2d 111), the court laid emphasis on the circumstance that the motion to dismiss was made by the defendant. There, in Nassau County District Court, defendant was charged with driving while intoxicated. His attorney spotted glaring defects in the simplified traffic information. Instead of moving to dismiss at the outset, he lay back at the trial, wedded in his own mind to the conclusion that the court, after the selection and swearing in of the jury, would have to dismiss the charge, thereby exposing his client, as he thought, to double jeopardy, if the People moved for a retrial. As we know, that age-old ploy was successful at the trial level, but came a cropper in the Court of Appeals. Former Chief Judge Breitel, noting that only the day before *Key* was handed down, the Supreme Court had decided *Scott,* and its four companion cases, remarked (p 119): "In other words, it appears from its latest exposition that the Supreme Court has divided trial orders of dismissal into two classes. In the first class are those that terminate the proceedings in defendant's favor (see *Lee v United States,* 432 US 23, 29-31, *supra).* These dismissals do not permit reprosecution. In the second class, however, are those dismissals that are 'functionally indistinguishable from a declaration of mistrial' *(id.,* at p 31). These dismiss-

---

1. *Burks v United States,* 437 US 1; *Greene v Massey,* 437 US 19; *Crist v Bretz,* 437 US 28; and *Sanabria v United States,* 437 US 54.

als do not bar reprosecution, *so long as the motion is made by defendant,* and the error prompting the motion is not motivated by bad faith or desire to provke the motion *(id.,* at pp 33-34)" (emphasis supplied). In a footnote Chief Judge Breitel hedged his bet, so to speak, when he stated that (pp 119-120): "The holding in *People v Brown* (40 NY2d 381, *supra)* may be correct on some views of the matter since there the defendant's motion to dismiss was made on the basis that the People had, at the close of their case, failed to prove a prima facie case, concededly on an issue of law." At bar, unlike the facts in *Key* and *Scott,* defendant did not make the motion; therefore, he does not come within the ambit of those cases. Harking back for a moment to the remarks of the Trial Judge as contained in the majority memorandum, it should be noted that the statement was truncated. It failed to include the final sentence, which reads: "With respect to the First Count in the Indictment, the Rape, based on what these folks just told me, the Court will dismiss that count." In 1926, in *People v Defore* (242 NY 13), Judge Cardozo noted, in writing for a unanimous affirmance where a defendant had been convicted of possession of a weapon (as a second offender), that the appeal concerned itself with a motion to suppress evidence because no warrant had been sought or issued. In rejecting the argument the Judge posed a rhetorical question in declarative form (p 21): "The criminal is to go free because the constable has blundered" and answered it with a ringing negative. Until 1961 that statement retained its viability. Then, in *Mapp v Ohio* (367 US 643), the Supreme Court applied the exclusionary rule to the States by extension of the Fourteenth Amendment to the United States Constitution and held that indeed the criminal must go free because the constable had blundered. Substitute the "court" for the "constable" and the analogy applies. With this in mind, and recalling, too, the repetitive refrain enumerated in the cases reviewed that only where the defendant makes the motion to dismiss is he to be denied the benefit of the double jeopardy clause, it is again pointed out that Boynton does not fall within this category. The order dismissing the rape count should be affirmed.